**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Case No: 2:25-cr-56 |
| : | |
| v. : | |
| : | JUDGE MICHAEL H. WATSON |
| : | |
| **CODY L. PRATER** : | |
| : | |

**GOVERNMENT'S NOTICE OF INTENT TO OFFER EVIDENCE**
**PURSUANT TO FEDERAL RULES OF EVIDENCE 404 & 414**

The United States hereby files its notice of intent to introduce evidence at trial under Federal Rule of Evidence 404(b) and 414. The Government respectfully moves for a pretrial ruling that evidence of the following is admissible under Rule 414 and as background evidence: (1) the defendant 2019 convictions in Athens County for Pandering Sexually Oriented Matter Involving a Minor (child pornography). Pursuant to Rule 404(b), the Government also intends to offer the following evidence—much of which is arguably intrinsic to the charged offenses but noticed nonetheless—that the defendant engaged in his child exploitation activities and (1) employed various means of encryption to protect his illegal activities including a TAILS Operating System, (2) utilized several aliases, (3) utilized the dark web TOR browser, (4) visited several online website known to be repositories of child pornography, (5) communicated with unknown individuals online about the use of Artificial Intelligence (AI) to create child pornography and obscene images, (6) participated in the furry community - a subculture interested in anthropomorphic animal characters – and utilized the furry alias "Kaji Taiki," and (7) searched several terms online that evidence an effort to locate child pornography on the internet.

## BACKGROUND

On April 10, 2025, the Grand Jury returned an Indictment that charged the defendant with various crimes involving child pornography and obscene materials depicting the sexual abuse and mutilation of children. (Doc. #18, Indictment). The counts can be summarized as follows:

| Count: | 18 U.S.C. § | Description: | 18 U.S.C. chapter: | Conduct Summary: |
|---|---|---|---|---|
| 1 | 2252(a)(2) & (b)(1) | Receipt of Child Pornography | 110 | Receipt of digital files depicting prepubescent and toddler-aged or infant children engaged in sex acts with adults, including oral sex, and subjected to sadistic and masochistic abuse, and the lascivious exhibition of their genitalia, anus, and pubic region. |
| 2 | 1462 | Transportation of Obscene Matters | 71 | Transportion of an obscene matter, to wit: visual depictions of child mutilation and torture. |
| 3 | 1466A(a)(1) & (d)(4) | Receipt of Obscene Visual Representation of Child Sexual Abuse | 71 | Received a visual depiction that depicts a minor engaging in sexually explicit conduct and is obscene, to wit: computer-generated prepubescent and pubescent minors engaged in sex acts with adults, bestiality, and subjected to sadistic and masochistic abuse. |
| 4 | 1466A(b)(1) & (d)(4) | Possession of Obscene Visual Representation of Child Sexual Abuse | 71 | Possession of a visual depiction that depicts a minor engaging in sexually explicit conduct and is obscene, to wit: computer-generated prepubescent and pubescent minors engaged in sex acts with adults, bestiality, and subjected to sadistic and masochistic abuse. |
| 5 | 2252(a)(4)(B) & (b)(2) | Possession of Child Pornography | 110 | Possession of visual depictions involving the use of prepubescent minors engaging in sexually explicit conduct. |

The case is set for jury trial on September 29, 2025 accordingly. (Doc. #26, Trial Order). The defendant's other acts are admissible as intrinsic evidence of the charged crimes, and, alternatively, pursuant to Federal Rules of Evidence 414 or 404(b). The Government respectfully moves for a pretrial order that the proposed evidence is admissible.

2

## FACTS RELATED TO THE DEFENDANT'S PRIOR CONVICTION AND CURRENT CASE

*Prior Conviction*: In the Court of Common Pleas, Athens County, Ohio, the defendant entered a plea of guilty to seven counts of Pandering Sexually Oriented Matter Involving a Minor, in violation of Ohio Revised Code Section 2907.322(A)(1), felonies of the second degree. The plea was entered by way of a Plea Agreement that was filed on June 4, 2019 under case number 18CR0184. On August 5, 2019, the defendant was sentenced to four years in the State Penal System on each count of conviction with all seven counts to run concurrent to each other. The Athens County judge, Judge Patrick J. Lang, ruled that the defendant would be required to register as a Tier II Sexual offender and was required to register as such for a period of 25 years, verifying his information personally with the Sheriff's office every 180 days.

The convictions stem from a 2017 investigation of the defendant for the possession of child pornography. The investigation was conducted by the FBI, with Task Force Officer Brett Peachey leading the investigation. Ultimately, a search warrant was executed on or about April 21, 2017 at the defendant's former residence located at 170 W. Columbus St. Nelsonville, Ohio. The search warrant execution yielded the recovery of three digital media devices found in the defendant's bedroom. One of the devices was a computer, which was found to contain approximately 146 video files of young males engaged in sexual acts. More specifically, these files were found in a folder path featuring the name "Jasper." An external hard drive was also recovered and was found to contain approximately 96 video files of young males engaged in sexual acts and three images were found which depicted prepubescent females engaged in sexual acts. Finally, the third device seized, a Samsung Galaxy phone, was also found to have approximately 180 image files of young males engaged in sexual acts.

3

*Current Investigation*: The defendant was charged with five child exploitation and obscenity related offenses in the Southern District of Ohio as noted above. This followed a July 11, 2024 search warrant execution at the residence the defendant shared with his father at 317 South Locust Street in McArthur, Ohio 45651. Several devices were seized, however, four were found to contain evidence pertinent to this case. All four devices were found in the defendant's bedroom. These devices were a Gaming PC (which contained three separate internal hard drives), a Google Pixel cellphone, a Lenovo tablet, and a thumb drive equipped with a TAILS operating system. The child exploitation evidence as alleged in Counts One and Five was found on the TAILS thumb drive, and the AI generated child pornography and obscenity material alleged in Counts Two, Three, and Four were found on the Gaming PC and the Google Pixel phone.  The Lenovo tablet contained user attribution that was relevant to the other devices which showed the same attributes.

The TAILS thumb drive was reviewed and was found to contain 10 videos which contain the following:

(1) Video approximately 25 seconds in length and appears to be an of infant child with their upper body covered by a small blanket while a male subject penetrates the child. The child appears to be lying or held face down in the video. The child can then be heard screaming and crying in pain as the male subject repeatedly thrusts his penis in and out of the child. The male subject then pulls his penis out of the child and appears to ejaculate on the carpeted floor.

(2) Video approximately one minute in duration. In the video it appears to be of a white toddler, of indeterminate sex being held down on a bed between the legs of a white male subject. The male subject then tries to insert his erect penis into the mouth of the minor child. The minor child continually turns its head from side to side trying to prevent the male subject from inserting his penis into the child's mouth. The child can be heard whimpering as it struggles to move between the male subject's legs.

(3) Video approximately 32 seconds in duration. The video appears to be of a white female infant child being sexually assaulted by a white male subject. In the video the child is being held down on the male subject's lap as the male subject thrusts his erect penis in the child's vagina, crying in pain as the male subject assaults the child.

4

(4) Video approximately 14 seconds in duration. In the video it appears to be an infant (sex indeterminate) placed on his/her back with a male subject straddling the child. The male subject then continually puts his erect penis into the infant's mouth. The child is heard screaming and crying as it struggles while the male subject assaults the child.

(5) Video approximately 17 seconds in duration. In the video, it appears to be a white female infant child placed on her back while a white male subject penetrates the child anally. The infant child can be heard screaming and crying during the assault by the adult male subject.

(6) Video approximately 25 seconds in duration. In the video, it appears to be a white infant female lying on her back on a changing table. While the infant is lying on her back on the table, a black adult male begins to ejaculate on the body of the female infant and then rubs his erect penis on her vagina before the video abruptly ends.

(7) Video approximately one minute in duration. In the video, it appears to be a white female toddler with brown hair. In the video the girl is observed using her had to stimulate a white adult male subject. The male subject can be heard telling the female toddler "keep doing it", then the toddler is heard saying "daddy, I think it ran out", then "daddy, why you doing that?" Later in the video the adult male subject is observed rubbing his erect penis on the vagina of the female toddler.

(8) Video approximately one minute in duration. In the video, a white infant child (sex indeterminate) is lying on its side while a white adult male subject is observed trying to place his penis into the mouth of the infant child. The male forcefully thrusts his erect penis into the mouth of the child. The infant child can be heard screaming, crying, and choking during this assault. The adult male subject can be heard saying "take my fucking cock" shortly before the video ends.

(9) Video approximately 36 seconds in duration. In the video, a white female toddler with blond hair is observed performing oral sex on a white adult male subject. The male subject can be heard giving the female toddler directions in how to perform the sex act on himself, the toddler complies with the male subject's directions before the video abruptly ends.

(10) Video approximately 60 seconds in length and appears to be of a Caucasian female infant child. The infant child is lying on her back as an unknown male subject penetrates the child anally with his penis. The child can then be heard crying in pain as the male subject repeatedly thrusts his penis in and out of the child. During the sexual assault of the infant child, the unknown male subject tells the child she is a "good baby". As the unknown male subject continues to penetrate the infant child, the child continues to cry, the unknown male subject then states to the infant child "Ok, hold on", and to "stop crying." The video abruptly ends while the male is still penetrating the infant child.

Across the other two devices, the Gaming PC and Google Pixel cellular phone, forensic examination has confirmed over 200 AI files that were generated by the defendant that generally

depicted infants and prepubescent minors, primarily male, engaged in sexually explicit conduct to include oral sex, vaginal and anal penetration, masturbation, bondage, bestiality, and other sexual activity with other adults and other minors. In addition, the defendant possessed at least 100 AI-generated images of child mutilation, torture, and death.

## LEGAL STANDARDS

Federal Rule of Evidence 414(a) provides: "In a criminal case in which a defendant is accused of child molestation,[1] the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." This rule created an exception to the general ban on propensity evidence contained in Rule 404(b). *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020). Congress enacted Rule 414 directly, instead of following the ordinary process for promulgating rules of evidence. *United States v. Mercer*, 653 F. App'x 622, 630 n.4 (10th Cir 2016). The rule thus reflects Congress's "strong legislative judgment" that prior sexual misconduct involving children, including child pornography offenses, is highly probative of an offender's propensity for committing a similar offense and "should ordinarily be admissible." *United States v. Deuman*, 568 F. App'x 414, 420 (6th Cir. 2014) (cleaned up); *accord Trepanier*, 576 F. App'x at 534.

Evidence of a defendant's prior distribution, receipt, or possession of child pornography is admissible under Rule 414, subject only to Rule 403's balancing test, which weighs the probative value of the evidence against the substantial risk of unfair prejudice or other harms. *Libbey-Tipton*, 948 F.3d at 701. When evaluating the probative value of this type of evidence, courts may consider

---

[1] Rule 414's definition of "child molestation" broadly includes any child pornography offense in violation of Title 18, Chapter 110 of the United States Code (or its state-law equivalent), which includes the distribution, receipt, and possession of child pornography, and not just hands-on child molestation offenses. *See* Fed. R. Evid. 414(d)(2)(B); *see also United States v. Trepanier*, 576 F. App'x 531, 534 (6th Cir. 2014); *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *United States v. Foley*, 740 F.3d 1079, 1088 (7th Cir. 2004).

the similarly between the act in question and the prior acts, the closeness in time between the acts, and the necessity of the evidence to the government's case. *Id.*

When evaluating the probative value of this type of evidence, courts may consider the similarly between the act in question and the prior acts, the closeness in time between the acts, and the necessity of the evidence to the government's case. *Id*. However, differences in fact patterns are not fatal where the two molestations show "a continuum of the same thing: the sexual exploitation of children." *United States v. Veerkamp* 2024 WL 3378459 (6th Cir. 2024).

Furthermore, Congress appears to have acted with intentionality in not adding a time limit to Rule 414. When the Violent Crime Control and Law Enforcement Act—which promoted Rule 414—was proposed, the House sponsor made clear that the absence of a time limit was intentional. *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001). (quoting 140 Cong. Rec. H8968—01, H8991 (daily ed. Aug. 21, 1994)) ("evidence of other sex offenses by the defendant is often probative and admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses."). Rather, the passage of time, if extensive, may go to the reliability of the testimony. *Id*. But the *Gabe* court had to admit that "it is reasonable to assume that a victim of child abuse is not likely to forget such a traumatic event." *Id*.

As to probative value, the Sixth Circuit recently upheld the Government's introduction of 414 evidence to establish a propensity to engage with child pornography because "*probative value of this evidence is clear* [where the defendant disputes] his identity as the producer and possessor of the child pornography. *Id.* (emphasis added).

The *Sykes* court, which analyzed Rule 413 as a sister rule to 414, observed that "Rule 413 evidence can be inherently prejudicial. By describing violent and sexual conduct, the evidence may have a strong propensity to evoke a visceral reaction from a lay jury." *United States v. Sykes*,

7

65 F.4th 867 (6th Cir. 2023). Nevertheless, "Congress's decision to codify Rule 413 reflects its belief of the probative nature of such testimony." *Id*. That codification reflects "an understanding that sexual assault is different from regular prior bad acts." *Id*.

Importantly, the *Libbey-Tipton* court recently adopted the reasoning in *Hall*, which, in concluding that even a previous hands-on offense could be used as evidence of intent to possess child pornography, stated:

> Hall's prior conviction and his nude photographs were relevant because they show that Hall ***intentionally pursued a sexual interest in children***, thereby demonstrating his ***intent to knowingly receive child pornography***. Hall's prior conviction for the sodomy and sexual abuse of a young boy also creates the ***logical inference that he has a sexual interest in children*** that is strong enough to cause him to break the law. Such a person is more likely to be interested in and to knowingly receive child pornography, rather than to receive the images accidently without the requisite knowledge or intent.

*United States v. Hall*, 202 F.3d 270, (6th Cir. 2000) (*emphasis added*).

However, inflammatory details that have little probative value would be considered unfairly prejudicial—as opposed to simply prejudicial. *United States v. Sims*, 708 F.3d 832, 835–36 (6th Cir. 2013). But evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994).

Additionally, any concern that the jury might convict based on the Rule 414 evidence rather than the charged conduct may be mitigated by "the district court's careful instruction to the jurors." *Id*. That is because well drafted instructions minimize any risk of *unfair* prejudice. *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (noting that there is a presumption that juries follow their instructions).

Background evidence, or *res gestae*, forms another exception to Rule 404(b)'s prohibition on the use of "prior acts" evidence. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013).

8

Background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Such evidence often forms "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

Proper background evidence is also subject to the balancing test from Rule 403. *United States v. Peete*, 781 F. App'x 427, 433 (6th Cir. 2019). However, defendants "are not entitled to a 'sanitized' recounting of the facts" that omits key details of the charged offense. *United States v. Peete*, 781 F. App'x 427, 436 (6th Cir. 2019)("prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events" or in such a way that the jury would discredit witnesses for telling a "truncated" story.).

## LEGAL ARGUMENT AND ANALYSIS

The Court should allow the Government to introduce evidence regarding the defendant's 2019 convictions for Pandering Sexually Oriented Matter Involving a Minor (child pornography) under Rule 414. In addition, pursuant to Rule 404(b), the following evidence surrounding the defendant's child exploitation activities should be admissible: that he (1) employed various means of encryption to protect his illegal activities including a TAILS Operating System, (2) utilized several aliases, (3) utilized the dark web TOR browser, (4) visited several online website known to be repositories of child pornography, (4) communicated with unknown individuals online about the use of Artificial Intelligence (AI) to create child pornography and obscene images, (5) participated in the furry community - a subculture interested in anthropomorphic animal characters

9

– and utilized the furry alias "Kaji Taiki," and (6) searched several terms online that evidence an effort to locate child pornography on the internet.

    **(A)    Rule 414 Permits Admission of <u>All</u> the "Prior Acts" Evidence, which is Proper Evidence of His Predisposition to Commit the Charged Child Pornography Offenses, His Sexual Interest in Children, His Identity, and His Knowledge.**

The Court should permit the Government to introduce evidence regarding the defendant's prior acts under the plain language of Rule 414 because the current and prior acts all qualify as "child molestation" under Rule 414.[2] The defendant is *currently* charged with receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 18 U.S.C. § 2252(a)(4)(B) respectively (Chapter 110 offenses). Rule 414 specifically includes Chapter 110 offenses, such as distribution, receipt, and possession of child pornography, in the definition of "child molestation." Fed. R. Evid. 414(d)(2)(B). Likewise, the prior acts also qualify as child molestation because the defendant was previously convicted of Pandering Sexually Oriented Matter Involving a Minor, child pornography related offenses in violation of Ohio law. More specifically, the defendant was convicted of Ohio Revised Code Section 2907.322(A)(1),which states "no person, with knowledge of the character of the material or performance involved, shall do any of the following: create, record, photograph, film, develop, reproduce, or publish any

---

[2] The Government only intends to introduce "prior act" evidence involving prepubescent child pornography victims, who fall within Rule 414(d)(1)'s definition of "child." Nevertheless, the Government submits that where (as here) the prior act evidence all falls under Title 18, Chapter 110, "it does not matter whether [the minors depicted] were under the age of 14." *Foley*, 740 F.3d at 1088 n.3 ("[Rule 414(d)(2)(B)] defines 'child molestation' to include 'any conduct prohibited by 18 U.S.C. chapter 110' without regard to whether the chapter 110 offense was committed with a person below the age of 14 . . . ."); *accord Seymour*, 468 F.3d at 385 ("Child molestation includes both conduct proscribed in Chapter 109A of Title 18 ["Sexual Abuse"], *if committed against a child*, and offenses involving child pornography." (emphasis added)); *United States v. Liestman*, 2020 WL 5593937, at *2 (W.D. Wis. Sept. 18, 2020) (same). *But see United States v. Sammons*, 2021 WL 1422266, at *3 (S.D. Ohio Apr. 15, 2021).

10

material that shows a minor or impaired person participating or engaging in sexual activity[3], masturbation, or bestiality."

Next, as the Sixth Circuit noted in *Deuman*, this evidence is highly probative of the defendant's propensity to receive and possess child pornography. This is more true because the nature of the conduct is the almost exactly the same. The Sixth Circuit has routinely upheld 414 evidence that involves dissimilar conduct that evidences a sexual interest in children. Here, the Court need not concern itself with that attenuation.

Finally, the evidence of the prior acts is necessary, and largely unavailable by other means, to show that the child pornography belonged to the defendant (not someone else), that he knowingly received and possessed it (instead of possessing it by accident or mistake), and that it was transported through the internet (not by other means). *Id.*; *Jones*, 747 F. App'x at 347; *Wolfe*, 430 F. Supp. 3d at 247. While all of the contraband in this case was found in the defendant's bedroom (which the United States must prove), he was not the only occupant of the house. The defendant lived with his father, who kept a padlock on the door to his own bedroom. Nevertheless, a reasonable juror may wonder if the devices containing contraband were shared devices. They may also wonder if the devices could belong to the defendant's father. A reasonable juror may very well find the lock on the father's door suspicious and think he may be the real possessor of child pornography. In addition, devices were recovered in a shed in the back of the house which were unable to be extracted or were extracted, contained no evidence of child exploitation activities, and further attributed to other individuals. The owner of the devices containing the crux of the Government's evidence is clearly an essential fact to prove.

---

[3] Sexual activity is defined in Ohio Revised Code Section 2907 as "sexual conduct or sexual contact or both." The definition of "sexual conduct" is further defined in Section 2907.01 as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex."

11

By introducing the underlying facts of the prior conviction, the United States can answer potential questions for the jury that will be relevant. First, the Government can show that the defendant has a predisposition—the character of someone who possess child pornography—which Congress has unequivocally stated is competent character evidence. Next, the prior conviction will show that the defendant has a sexual interest in children, which goes to his intent. Third, the Government can show identity through the admission of this evidence, proving that the person who committed the crimes as charged is the defendant. The defendant uses a variety of aliases, and while much of the evidence from the prior conviction is no longer available, FBI TFO Peachey and other witnesses for the Government will be able to establish that the alias "Jasper" was used in both his prior case and the instant case.

Rule 403 does not bar admission of the "prior acts" evidence, because its probative value is not "substantially outweighed" by the danger of "unfair prejudice." *See* Fed. R. Evid. 403; *Libbey-Tipton*, 948 F.3d at 704 (requiring defendant to show more than "the [mere] stigma associated with child molestation" to bar evidence of prior acts). Courts have repeatedly warned against "Rule 414 . . . be[ing] effectively gutted" by flim-flam arguments of unfair prejudice under Rule 403. *United States v. Sullivan*, 751 F. App'x 799, 805 (6th Cir. 2018) (cleaned up). Congress sought to overrule such "[c]ategorical exclusions of inflammatory propensity evidence" by enacting Rule 414 in the first place. *Id.* As such, the Sixth Circuit has held that "if the charged conduct and the prior Rule 414 conduct are sufficiently similar, the prejudicial effect of such evidence is outweighed by its probative value," and the evidence is admissible under Rule 403. *United States v. Underwood*, 859 F.3d 386, 393 (6th Cir. 2017) (cleaned up). Here, the acts are more than sufficiently similar—they are nearly identical. As a result, the evidence is admissible, notwithstanding Rule 403. *Id.* This simply isn't a case where the charged and uncharged acts are

of such a different character that the uncharged acts "would be more alarming and disgusting to the jury than the actual charged conduct." *Libbey-Tipton*, 948 F.3d at 704 (cleaned up).

For all of the foregoing reasons, the underlying facts of the defendant's prior conviction are admissible under Rule 414 and are so similar and close-in-time to the charged offenses that the risk of Rule 403 unfair prejudice is null.

> **(B)** **Evidence that the Defendant Utilized a TAILS Operating System to Encrypt his Child Pornography (Counts One and Five) is Intrinsic Evidence of *How* he Received and Possessed Child Pornography; and is also Proper 404(b) Evidence of his Knowledge and Identity.**

In utilizing the TAILS Operating System (OS), the defendant sought to keep his child pornography completely undetectable, and his identity completely anonymous. The TAILS OS is designed to force all user connections to go through the Tor browser and block any non-anonymous connections. When an external device containing the TAILS OS is connected to a computer and utilized to access the internet, no traces of the internet activity conducted will remain on the computer or external device. The TAILS drive is transferrable, making it highly portable for use on different computers without leaving evidence of a user's activities. TAILS has an option for encrypted persistent storage where a user can save documents, files, photographs, and videos securely on the USB drive. Users often utilize encrypted passwords on the TAILS drive to prevent unwanted access by any subject that may come into possession of the drive without the owner's password. If the password is lost or forgotten by the user, they will no longer be able to access the data they're storing on their TAILS drive.

This is how the defendant went about committing the crime, and thus the use of the TAILS OS is background evidence the jury should consider. This is analogous to any number of standard factual scenarios that would be unquestionably admissible: a shooter wearing gloves to not leave prints, a robber wearing a mask, or a drug dealer using a burner phone. All of which are relevant

13

to the key point that going undetected from law enforcement is of utmost importance in committing a crime.

This evidence is also indicative of the defendant's knowledge in committing the violations of federal law. The TAILS OS is an advanced form of encryption. So advanced that it is among the most difficult for law enforcement to crack. Presenting evidence of this level of encryption to the jury will help them understand the steps the defendant took to cover his tracks, and his obvious knowledge of the child pornography found on the flash drive. This is more true because the defendant was already caught with child pornography once and took additional steps to try to avoid that same fate again. This was verified through the forensic extractions of his other devices, which resulted in searches by the defendant about the TAILS OS. Presentation of the complete, unsanitized method of encryption (and encryption research) will show that the defendant is the person who received the child pornography on the thumb drive and possessed it in his bedroom.

**(C)** **Evidence that the Defendant Utilized Several Aliases is Proper Background Evidence, and Further Ties the Digital Media Devices Containing Items of Evidentiary Value Together Which Further Proves Identity and Knowledge.**

Across the devices reviewed by law enforcement, dozens of emails, account names, and passwords were found. This is relevant background evidence that shows the jury what law enforcement found when they reviewed the defendant's devices. It contributes to proving the defendant's identity because many of his aliases are either spinoffs of his real name – Cody Layne Prater - or are completely different names, but secured by the same or similar password. For example, the log in usernames flagged by law enforcement include clprater97@gmail.com, dakotaprater97@gmail.com, layneconant@gmail.com to name a few. The defendant also saved passwords to these various websites and accounts and used some variation of the password "gaymer4505". For example, his SSI benefits log in was noted as "clprater97" and his password

was saved as "Gaymer4505!" This is relevant is assessing other accounts he accessed and used to prove user attribution. For example, another account was flagged in which the username was listed as "rhysthemouse@gmailcom" which has no clear relation to the defendant. However, the password for that account was noted as "gaymer4505" which is consistent with other accounts that are clearly attributable to the defendant. This user attribution in the form of various alias names and user accounts further is admissible to prove his identity as the owner of the devices with both the child pornography and AI generated obscenity and child pornography files.

**(D) Evidence that the Defendant Used the Dark Web TOR Browser to Seek Out Child Pornography is Purely Background Evidence That Shows the Methods he Used to Obtain Contraband.**

Like using the TAILS OS, utilizing the TOR browser is another means the defendant used to seek out anonymity and remain concealed in his exploitation and obscenity activities. The forensic extractions revealed that the defendant was visiting .onion sites – a special use top level domain name designating an anonymous Onion service, formerly known as a "hidden service" that is reachable via the Tor network. His access of these type of websites is background evidence which shows the jury the tools and methods he used to avoid detection as he sought out child pornography. As further outlined above, this evidence will not be offered for a character purpose, but rather to give the jury the complete picture of the defendant's activities

**(E) Evidence that the Defendant Searched for and Visited Several Cites Known for Collections of Child Pornography is Both Background Evidence of the Charged Offenses and is Proper Evidence of his Knowledge and his Identity.**

The child pornography files alleged in Counts One and Five were found on the USB thumb drive equipped with the TAILS OS. However, evidence from the forensic extraction of the Gaming PC revealed that it had interacted with the Gaming PC found in the defendant's bedroom. Indeed,

a forensic review of the Gaming PC revealed several Firefox visits to https://tails.boum.org/ and included Google searches on installing and uninstalling TAILS.

Forensic reviews also showed that the Gaming PC utilized the TOR browser to access several ".onion" domains. As noted above, Onion services are most commonly associated with the dark web. Review of the defendant's TOR browser usage showed he visited the following Onion domains, all of which are repositories of child pornography: Neverland, KidFlix, NAUGHTY KIDS, PedoLinks, and Young Love. Of particular note is that the ten child pornography videos outlined above found on the TAILS thumb drive all bear a "KidFlix" banner at the bottom of each video indicating it was downloaded from that website – or at the least, had been originally and was shared elsewhere and further distributed out. Simply put, the defendant's search history shows the methods he used to search out the child pornography the United States has alleged he received and possessed.

The same is true for the defendant's other devices. The defendant's Google Pixel phone, which also contains identity evidence such as photos of the defendant's driver's license, a device username of Cody, and the Gmail account clprater97@gmail.com, contained searches within the Telegram application that demonstrate his intent to access child exploitation material. The following terms were searched: Toddler sex, No limits CP, Hardcore CP, Cp rape, Tor cp, Underage boys, Animal rape, Animals suffering, and Bestiality Snuff. Furthermore, the Google Pixel cellular phone also utilized the TOR to access Onion domains. The defendant visited the following Onion domains, all of which are repositories of child pornography: Neverland, KidFlix, PedoLinks, TorBoys, BoysLand-2, Hurt Land, PedoCrypt, and Boys R Us. This is all evidence that is again relevant to proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident pursuant to Rule 404(b).

**(F)** **Evidence that the Defendant Talked with Unknown Individuals on Telegram About the Creation of Obscenity Materials Using AI is Evidence of His Knowledge, Plan, Identity, Intent, and Lack of Mistake.**

While reviewing the defendant's Google Pixel cellular phone, messages within the Telegram application installed on the device were recovered showing he communicated with unknown individuals about the creation of AI images using various platforms, but primarily one called Stable Diffusion. Stable Diffusion is the AI platform the defendant used to create many of the obscene images in this case relevant to Count Two. More specifically, the child mutilation series encompassed in Count Two is a collection of AI-generated images depicting a nude infant/toddler spread on a bed with blood on the child's head/face and genital regions. The images were generated with Stable Diffusion, a text-to-image model that generates high-quality images based on textual descriptions/prompts. The Stable Diffusion name is listed in the metadata for each image indicating how it was created. The defendant was required to enter in prompts into Stable Diffusion to create these images. One such example is file name *00084-1218476549.png* which lists the following Stable Diffusion prompts entered by the defendant for creation - *Prompt:* photo of a nude toddler girl lying on bed, eyes closed, sleeping (pudgy:1.2), nude, nipples, small pussy, (bloody, bloody vagina, gaping vagina:1.3), pale complexion, (hands behind head:1.2), (decapitated, headless:1.4)

First, these communications via Telegram are intrinsic to the conduct alleged in Counts Two, but also in Count Three and Four regarding obscene material. While the defendant is making, transporting, and possessing these obscene materials, he is talking about it online with others via Telegram. Furthermore, these communications show his knowledge of Stable Diffusion; his intent regarding these images; his plan to create, share, and possess these images; and they show that it is by no mistake that the defendant finds himself charged with obscenity crimes.

**(G) Evidence that the Defendant Participated in the Furry Community Using the Name "Kaji Taiki" is Proper Evidence of his Identity as the Possessor and User of the Computer.**

The defendant's Gaming PC utilized the Windows operating system. The username on the Windows account is listed as "Stark" and the full name is noted as "Kaji Taiki." According to open-source materials and searches by law enforcement online, Kaji Taiki is the defendant's alias or name in the furry community.





Wiki Fur, https://en.wikifur.com/wiki/Kaji_Taiki (last visited Sept. 8, 2025). While the jury need not see the webpage noted above, it illustrates to this Court what law enforcement has reviewed and will testify to when they tell the jury how they know that Kaji Taiki, the registered full name on the computer, is the defendant. This again clearly falls under the realm of background evidence. *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) ("The purpose of background evidence is to put the charges in the appropriate context. It would be exceedingly difficult for witnesses to relay a story without referencing preceding or contemporaneous acts that are incidental but necessary to telling as cogent story, as it relates to the charges the defendant is facing.").

## **CONCLUSION**

With all of this in mind, the risk that the defendant will be convicted of a crime he did not commit because of evidence of his other wrongs seems non-existent. Rather, he has a provable pattern—rooted in an admissible predisposition—that he acted in concert with. Under our rules, that is fair game. The United States hereby provides notice of its intent to present the foregoing evidence of the defendant's sexual interest in children, and other related conduct.

Respectfully submitted,

**DOMINICK S. GERACE II**
UNITED STATES ATTORNEY


*/s/ Tyler Aagard*
**EMILY CZERNIEJEWSKI (IL 6308829)**
**TYLER AAGARD (NC 54735)**
Assistant United States Attorneys
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 406-3572
Emily.Czerniejewski@usdoj.gov
Tyler.Aagard@usdoj.gov




**Certificate of Service**

I hereby certify that a copy of the foregoing Motion was served this 8th day of September, 2025 electronically upon counsel for the defendant.



*/s/ Tyler Aagard*
Emily Czerniejewski
Tyler Aagard
Assistant United States Attorneys