# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| vs. | : | Case No. 2:25-CR-56 |
| | : | |
| CODY L. PRATER, | | JUDGE MICHAEL H. WATSON |
| Defendant. | : | |

## MOTION TO DISMISS COUNTS II, III and IV

COMES NOW, the defendant, Cody L. Prater, by and through undersigned counsel and moves to dismiss Counts 2 through 4, charging him with possession, receipt and transportation of obscene materials in violation of 18 U.S.C. §1466A and §1462. The government's attempt to extend obscenity law to artificial intelligence ("AI") – generated images is unconstitutional based on binding Supreme Court precedent which forecloses prosecution under the obscenity doctrine when no real-world harm is implicated, and due process principles bar application of "community standards" to synthetic material that did not exist when the doctrine was framed.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

 /s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org

Attorney for Defendant
Cody L. Prater

**MEMORANDUM IN SUPPORT OF MOTION**

**I.    INTRODUCTION**

This case presents a novel but constitutionally fatal problem: whether obscenity law, grounded in community reactions to real-world sexual expression, may be extended to depictions generated by artificial intelligence.   The answer must be no.

The obscenity doctrine is an exception to the First Amendment protection, but its contours are tightly constrained.   *See Miller v. California*, 413 U.S. 15 (1973). The "community standards" prong of *Miller* presume that society has a settled sense of what depictions of sexual conduct are "patently offensive."   That presumption collapses when applied to AI-generated images, which are categorically distinct from human-created pornography.

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the Supreme Court struck down a statute criminalizing "virtual" or computer-generated child pornography because no real child was harmed and the government lacked a compelling interest in suppressing purely fictional expression.   That holding applies with equal force here.

**II.    OBSCENITY DOCTRINE AND EVOLVING STANDARDS OF DECENCY**

**LEGAL ANALYSIS**

An indictment must be dismissed if it fails to state an offense or if the statute, as applied, is unconstitutional.   FED. R. CRIM. P. 12 (b)(3).   It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Gaynard v. City of*

*Rockford,* 408 U.S. 104, 108-109 (1972). "Vague law may trap the innocent by not providing fair warning." *Id.* A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, or if it invites arbitrary enforcement. *Id.*

### a. *The Miller Test Cannot Constitutionally Be Applied to AI-Generated Material*

The Supreme Court in *Miller v. California*, 413 U.S. 15 (1973), defined obscenity by reference to "contemporary community standards." This framework was designed in an era when obscene materials consisted of tangible photographs, books or films. This test works – if at all – only where communities have established norms regarding depictions of real sexual conduct. No such consensus exists with respect to AI-generated imagery. The government now seeks to extend that doctrine to images generated wholly by artificial intelligence – a technology unknown at the time *Miller* was decided. Applying *Miller* where the "community standard" is wholly undefined creates a void-for-vagueness problem that the Constitution cannot tolerate. Such an extension violates the constitutional requirement that criminal statutes provide fair notice of prohibited conduct.

### b. *Ashcroft v. Free Speech Coalition Forecloses Criminalization of Virtual Depictions*

In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the Supreme Court struck down provisions of the Child Pornography Prevention Act (CPPA) that criminalized "any visual depictions" that "appears to be" of a minor engaged in sexually explicit conduct, including virtual or computer-generated images. The Court held: "The CCPA prohibits speech despite its serious literary, artistic, political, or scientific value. The prospect of crime does not justify laws suppressing protected speech." Id. at 246

The rationale of *Ashcroft* applies here. If Congress cannot criminalize fictional computer generated images of minors, it likewise cannot bootstrap those same images into "obscenity" to avoid the First Amendment. The government's attempt to repackage the same category of virtual images as "obscene" is an impermissible end-run around *Ashcroft*. Where no real person is harmed, the Government's interest in censorship collapses.

### A. The Evolving Standards of Decency Doctrine Underscores That Obscenity Cannot Encompass AI Creations.

The Supreme Court has long recognized that constitutional protections evolve with "the standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). In the First Amendment context, this principle requires courts to recognize that what may once have been considered "obscene" may not be today.

The Sixth Circuit has recognized that the line between protected speech and obscenity must remain carefully drawn. *United States v. Thomas*, 74 F. 3d 701, 711 (6th Cir. 1996) Applying obscenity doctrine to AI-generated victimless depictions is precisely the kind of overreach the Sixth Circuit warned against. It expands, rather than narrows, the obscenity exception in a way incompatible with evolving constitutional standards.

Today's society increasingly recognizes distinctions between harmful and harmless forms of sexual expression, between depictions involving real victims and purely synthetic images, and between artistic use of technology and exploitative conduct. Obscenity doctrine cannot constitutionally evolve backwards to capture victimless, AI- created imagery when our community standards increasingly demand nuance and harm-based analysis.

### B. Application of Obscenity Law to AI Images is Unconstitutionally Vague

Even if the *Miller* framework could extend to AI, its application here would violate the void-for-vagueness doctrine. The void-for-vagueness doctrine prohibits criminal laws that fail to

give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned,* 408 U.S. at 108. Here, vagueness is inevitable. Citizens cannot possibly predict how "community standards" would apply to synthetic AI depictions. Some may see them as art, others as fantasy, others as obscene – but the Constitution requires clarity before liberty is deprived.

### III. THE FIRST AMENDMENT, VIRTUAL IMAGES AND POSSESSION IN THE HOME

Counts Two, Three and Four of the Indictment charges Mr. Prater with AI generated obscenity under 18 U.S.C. §1466A. Specifically, he is charged with Transportation (Count Two), Receipt (Count Three) and Possession (Count Four) of obscene images.

In *Ashcroft v. Free Speech Coalition*, the Supreme Court considered an overbreadth challenge to a precursor to the PROTECT Act, the Child Pornography Prevention Act of 1996, prohibiting child pornography that did not depict an actual child. 535 U.S. 234 (2002). The Court noted that *Ferber* "distinguished child pornography from other sexually explicit speech because of the States's interest in protecting the children exploited by the production process." The production of *virtual* child pornography doesn't directly harm children, but Congress "decided the materials threatened children in other, less direct ways." *Id.* at 240, 241.

The Supreme Court concluded that the ban on virtual pornography violated the First Amendment, for two reasons: (1) it prohibited non-obscene expression, including material potentially having significant artist value; and (2) the government's proffered reasons were unpersuasive. Specifically, the Court rejected the rationale that offenders might groom children with virtual pornography by stating "There are many things innocent in themselves, however, such as cartoons, video games, and candy, that might be used for immoral purposes, yet we would not expect those to be prohibited because they can be misused." *Id.* at 251. Counts Two, Three and Four all deal with virtual obscene images, not images of real children or morphed images based

on real people.

*Free Speech Coalition* also rejected the rationale that criminalizing virtual child pornography was necessary to achieve the objective of eradicating the market for all child pornography. *Id.* at 254 ("We need not consider where to strike the balance [in suppressing speech related to a crime] in this case, because here, there is no underlying crime at all.")

Furthermore, The Supreme Court in *Georgia v. Stanley*, 394 U.S. 557, 559 (1969) made an exception to the general rule that obscene material isn't protected by the First Amendment:

> Whatever may be the justification for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own home, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government power to control men's minds."

Id. at 565. The Supreme Court's holding in *Georgia v. Stanley*, precludes the Government from prosecuting Mr. Prater in Counts Three and Four, for what he may or may not have done within the confines of his home.

Under *Stanley*, § 1466A which was enacted as part of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003), is unconstitutional as a defendant has the right to receive and possess obscene materials in his own home.

This exact issue of possession of AI generated obscenity in the home was recently adjudicated in the Western District of Wisconsin. There the United States District Court held that the statute was not unconstitutional as it related to production of virtual child pornography images, it was unconstitutional to possession of virtual child pornography possessed in the home. *See United States v. Anderegg*, 3:24-cr-50-jdp ECF. No. 73.

Based on the Supreme Court cases, *Ashcroft v. Free Speech Coalition* and *Stanley v. Georgia*, this Court should dismiss Counts Two, Three and Four for violations of Mr. Prater's First Amendment Rights.

**CONCLUSION**

**WHEREFORE,** because obscenity law, as articulated in *Miller* and its progeny, cannot constitutionally be stretched to encompass AI-generated depictions without collapsing into vagueness; because *Ashcroft* squarely forecloses prosecution of virtual material lacking a real victim; and because evolving standards of decency demand narrower not broader, applications of obscenity law, Counts Two through Four must be dismissed.

Furthermore, Counts Three and Four – Receipt and Possession of AI-Generated images should also be dismissed under *Stanley v. Georgia,* 394 U.S. 557 (1969), where these materials were possessed in Mr. Prater's home.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

 /s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org

Attorney for Defendant
Cody L. Prater

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender