IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CODY L. PRATER | Case No. 2:25-cr-00056<br><br>JUDGE MICHAEL H. WATSON |

### UNITED STATES' NOTICE OF EXPERT TESTIMONY

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States provides notice of its intent to introduce the testimony of Digital Investigative Analyst (DIA) Chancey Davis under Federal Rule of Evidence 702.

As detailed further below, Ms. Davis is expected to testify about her forensic review of digital devices seized from the defendant's residence, the methods and tools she used during that review, files she observed on those devices, and images generated using text-to-image computer programs.

### Background and Qualifications

Ms. Davis is an expert in computer forensics and investigations involving child sexual abuse material (CSAM or "child pornography") who is employed by the High Technology Investigative Unit (HTIU) of the Department of Justice's Child Exploitation and Obscenity Section. In this capacity, Ms. Davis assists law enforcement agents and prosecutors in the investigation and prosecution of computer facilitated child exploitation offenses. Ms. Davis's duties include identifying, collecting, preserving, examining, and analyzing digital evidence from a variety of sources including computers, phones, and other electronic devices. Ms. Davis also develops and delivers training for law enforcement agencies, researches and helps develop new investigative tools and techniques, and has testified as an expert witness in federal court. In her

work, Ms. Davis uses industry standard tools such as the Tableau TX1, Encase, Magnet Axiom, and Griffeye.

The forensic tools identified in this notice and utilized by Ms. Davis in this case are among the most commonly used tools in computer forensics, particularly among law enforcement examiners.[1]

Unlike most other digital forensic examiners, analysts with HTIU focus solely on child exploitation cases. The HTIU's Director, James M. Fottrell, has headed the unit since 2002. In his tenure as the director of the unit, Mr. Fottrell has overseen more than 2,000 child exploitation investigations. The HTIU is a highly collaborative environment. A unit-wide meeting is held weekly, and DIAs assist one another, share information and resources, and discuss their work on a daily basis. Each new analyst is assigned one or two more senior colleagues who serve as mentors during their first year on the job.

Ms. Davis began working at HTIU in August of 2022. In her time with the HTIU, Ms. Davis has examined more than fifty digital devices using the tools listed above. She has written 14 forensic reports and seen hundreds of thousands of images of CSAM. She has also assisted other DIAs in their casework and with their reports. Ms. Davis received her EnCase certification in November of 2023. The certification course includes receiving twenty-four hours of instruction and taking two tests. The second test is a practical exam.

Ms. Davis's first three months in the HTIU consisted of receiving training provided by the HTIU Director and various types of on-the-job training, including shadowing more senior

---

[1] A 2023 article that announced Magnet's acquisition of Griffeye stated that "Griffeye is world-leading in its field and used by over 1,000 police agencies across the world for processing, sorting and analyzing large volumes of images and videos–especially in cases containing child sexual abuse material." Magnet Forensics Acquires Griffeye, a Leading Digital Media Forensics Software Firm, BUSINESSWIRE, https://www.businesswire.com/news/home/20230821831668/en/Magnet-Forensics-AcquiresGriffeye-a-Leading-Digital-Media-Forensics-Software-Firm (Aug. 21, 2023, 8:00 AM).

HTIU analysts and performing work such as imaging devices under their supervision, and becoming knowledgeable about different platforms and forums through which offenders obtain CSAM. Ms. Davis reviewed forensic reports from prior HTIU investigations, most of which average at least ten pages and have forensic attachments that make them far more voluminous. Ms. Davis reviewed more than 150 of these reports, the majority of which were from cases since 2015 and covered technologies such as commercial websites, email and Usenet Newsgroups, Freenet, Frost, and peer-to peer programs such as BitTorrent, Emule, Gnutella, Shareaza, Kazaa, and E-Donkey, The Onion Router (TOR), Mega, Drop Box, Discord, Telegram, Kik, Twitter (also known as X), Instagram, Reddit, Roblox, and other gaming platforms.

In her role as a DIA, Ms. Davis is responsible for developing expertise in emerging technologies used by child exploitation offenders, including artificial intelligence (AI) tools and text-to-image generators. In particular, Ms. Davis has developed expertise in the operation of Stable Diffusion, which is an open-source text-to-image generative AI model that creates realistic or artistic images based on text prompts. Ms. Davis has reviewed manuals, tutorials, and other reports regarding the function and operation of Stable Diffusion. Ms. Davis also regularly reviews commentary from online communities which discuss the creation of images using Stable Diffusion. Ms. Davis has inspected the source code of Stable Diffusion and has extensive experience operating the program.

Ms. Davis has worked on cases that involved networks of CSAM offenders that communicated on social media platforms. In one case, Ms. Davis reviewed thousands of chat messages sent between offenders. In the course of that review, Ms. Davis became increasingly familiar with certain terminology commonly used by CSAM offenders such as the terms "cp," "loli," and "pedo." She also became familiar with common naming conventions that offenders

would use for CSAM images and videos. Her exposure to and familiarization with these terms and associated media has continued in every examination since.

In a typical day, Ms. Davis's work involves imaging devices, identifying and analyzing forensic artifacts on those devices, and writing reports of her examinations. Ms. Davis will usually first use the forensic tool EnCase to get a general overview of what a particular computer or hard drive contains and then use the digital investigative platform Axiom to analyze and export various forensic artifacts. She will then use the digital investigative tool Griffeye to help her analyze the images on a particular device. Her review of the images typically includes her reading the file names as well as looking at the media itself. Based on her examination using all three tools, Ms. Davis will then author a report of her examination, which Mr. Fottrell will review for accuracy. Once the report is finalized, they both sign it.

Prior to joining HTIU, Ms. Davis attended the University of Alabama at Birmingham, where she received a Master of Science degree in Cyber Security, and Talladega College, where she received a Bachelor of Arts degree in Criminal Justice. During her undergraduate studies, she interned at the Pell City Police Department, shadowing detectives on a variety of cases involving different crimes. For her graduate degree, Ms. Davis took multiple digital forensics classes, including "Investigating Online Crime," "Cloud Security," and "Network Forensics." These courses covered how to conduct a forensic analysis, how to recover deleted files, different types of encryption, and various network infrastructures. She focused her coursework on cybercrime, which required her to take both digital forensics and open-source intelligence courses and emphasized the topics of cyber-security and network analysis. In graduate school, Ms. Davis interned at the University of Alabama at Birmingham Computer Forensics research lab for five months. There, she conducted investigations into phishing email scams and used Python

programming language to write programs to analyze and organize a repository of emails relating to Covid-19 scams.

In the past four years, Ms. Davis has testified as an expert witness in the field of computer forensics in the following federal cases: *United States v. Kelly*, No. 1:24-cr-246, ECF No. 38 (E.D. Va.); *United States v. Cragg*, No. 1:17-cr-00012 (E.D. Cal.). Ms. Davis has not authored any publications in the last ten years.

### Summary of Testimony

Ms. Davis is expected to testify about her review of the devices seized from and used by the defendant to create, receive, access, and view digital images and videos, including obscene material and CSAM. These devices have been made available—and continue to remain available—for examination by the defense. Specifically, Ms. Davis is expected to testify that the forensic evidence on the devices used by the defendant is consistent with the allegations that the defendant received, possessed, and accessed CSAM and received, transported, and possessed obscene matters as alleged in the Indictment and notices of other acts under Fed. R. Evid. 404(b) and 414. Ms. Davis is expected to testify that a user of devices belonging to the defendant 1) used generative AI programs to create obscene images of minors, including nude images of minors; 2) received obscene images via a messaging application; and 3) sent obscene images via a messaging application. Ms. Davis is expected to testify that the devices contain evidence consistent with the defendant's use of those devices.

Ms. Davis is expected to testify about how the defendant created, transported, and possessed images found on his digital devices created with Stable Diffusion. Ms. Davis is expected to testify about the function and operation of Stable Diffusion and the Stable Diffusion user interfaces found on the defendant's devices, including AUTOMATIC1111 and ComfyUI. In

particular, Ms. Davis will testify about the prompts the defendant entered into Stable Diffusion and will identify the resulting obscene images. She will testify about how a user can "weight" particular prompts in Stable Diffusion to emphasize or de-emphasize certain words, styles, or features during image generation. By way of example and not limitation, Ms. Davis is expected to testify that the defendant's Stable Diffusion prompts included instructions to give greater "weight" to "bloody, bloody vagina, gaping vagina" and "hands behind head" for images depicting a "nude toddler girl lying on bed, eyes closed, sleeping[.]" She will testify that the defendant's prompts included "Low-Rank Adaptations" (LoRAs) to fine-tune the images generated by the program, including LoRAs for toddlers and prepubescent minors. She will testify that the defendant's devices had LoRAs saved in the ".safetensor" format.

      Ms. Davis is expected to enter into evidence a demonstrative exhibit with images and video depicting the installation, operation, and function of Stable Diffusion.

      Ms. Davis is also expected to testify that the forensic evidence she reviewed on the devices used by the defendant revealed CSAM and obscene files that the defendant is charged with in the Indictment and that the forensic evidence is consistent with the defendant's use of those devices. Ms. Davis will explain the various steps involved in forensic examination of electronic devices, including the use of write blockers, the creation of forensic images using FTK software, the examination of forensic images using Axiom software, and other forensic tools. Some of the forensic steps and artifacts regarding the devices have been memorialized in reports,[2] and Ms. Davis will explain the significance of those findings, including findings regarding file directories, metadata, prefetch files, search terms, shellbags, jump lists, LNK files,

---

[2] The content of these reports is hereby incorporated into this notice. These reports will be provided to counsel for the defendant. Attachments to the report contain CSAM and obscene material and will be available for inspection by defense counsel at the U.S. Attorney's Office.

and other files or programs found on defendant's devices.

Ms. Davis is expected to testify that the defendant's devices contained programs to access the dark web such as TOR, the Opera web browser, and "Tails," which is an encrypted "amnesiac" operating system designed to facilitate anonymity. Ms. Davis will testify that the defendant's devices contained evidence indicating that the user accessed dark web hidden services containing CSAM, including bookmarks for Neverland, KidFlix, PedoLinks, Hurt Land, Boys R Us, and PedoBum. Ms. Davis will also testify about other programs found on the defendant's devices, including a messaging application, which included chats indicating a sexual interest in children and search terms for "Toddler sex," "No limits cp," "Hardcore cp," "Cp rape," "Tor cp," "Animal rape," "Animals suffering," and "Bestiality snuff."

Ms. Davis is expected to testify about the general history of generative AI programs and the evolution of their capabilities over time. She will testify that text-to-image generative AI models were not widely available until approximately 2021. Ms. Davis is expected to testify that few, if any, text-to-image generative AI models had photorealistic capabilities before 2022. She is expected to testify that, before 2022, generative AI models generally did not produce photorealistic faces, hands, or text. Similarly, she is expected to testify that generative AI models with the capability of generating photorealistic videos—if any—were not generally available before approximately 2023 and that such generative AI models are still evolving in their ability to produce photorealistic videos.

Ms. Davis may be asked to review the images or videos found on the defendant's devices, including their creation date, EXIF data, and other metadata to provide an opinion on the likelihood that such image or video was created by a generative AI model.

Ms. Davis is expected to testify that the defendant's desktop computer also contained

evidence that he used a Dynamic Domain Name System (DDNS) service that allows users to remotely access their home networks. She will testify that the defendant's computer contained downloads from a DDNS which were saved to a Stable Diffusion folder.

Ms. Davis may also testify regarding the following subject matters:

> Regarding evidence showing that a particular user accessed a device, including usernames, logins, passwords, and personal files;
>
> Regarding the Internet, internet service providers, IP addresses, including the interstate nature of the Internet and how use of the Internet affects the forensic evidence within an electronic device;
>
> Regarding how computers receive information and data through the Internet, and how files are transferred to, and stored within, electronic devices, including thumbcache and cache images, data in unallocated space, and hashes;
>
> Regarding forensic evidence suggesting that someone has tried to delete material from an electronic device;
>
> Regarding the installation and operation of Stable Diffusion software;
>
> Regarding forensic tools commonly accepted and used to examine the user activity and content of an electronic device, including, but not limited to, Axiom, EnCase, and other tools and results of such tools that have been used on the defendant's devices;
>
> Regarding evidence of web browsing, including, but not limited to, file paths, cookie files, internet history, bookmarks, and other Internet-based communications stored in electronic devices, including in temporary Internet file folders, file slack, and unallocated space;
>
> Regarding terminology commonly associated with the sexual exploitation of children, especially as such terms pertain to file names and online search terms.

Ms. Davis will base her testimony on her high degree of familiarity with digital forensic examination, the training she has received and presented on the operation of digital forensic software, her extensive experience forensically examining digital devices using such software,

and her experience investigating online sexual exploitation of children. She will further testify that the principles and methods upon which she relied in her testimony are commonly accepted in the scientific community and are highly reliable.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G)(v), Ms. Davis's affirmation and signature is below.

_____
CHANCEY DAVIS
Digitally signed by CHANCEY DAVIS
Date: 2025.09.12 11:58:42 -04'00'

Chancey Davis
Digital Investigative Analyst
U.S. Department of Justice
Child Exploitation and Obscenity Section

[*continued on next page*]

**Reservation of Rights and Request for Reciprocal Discovery**

To date, the defendant has not provided notice of any experts under Federal Rule of Criminal Procedure 16. Accordingly, this notice does not identify any experts that the United States may use at trial "during its rebuttal to counter testimony that the defendant has timely disclosed." Fed. R. Crim. P. 16(a)(1)(G)(i). If the defendant discloses any experts under Federal Rule of Criminal Procedure 16(b)(1)(C), the United States reserves all its rights to designate additional rebuttal experts or topics of potential testimony or to raise any objections.

The United States' instant disclosure of expert witnesses also serves as a request for reciprocal discovery and notice of expert testimony by the defendant, pursuant to Federal Rule of Criminal Procedure 16 and Local Rule of Criminal Procedure 16.1(b).

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

By:    */s/ Eduardo Palomo*
EDUARDO PALOMO (TX 24074847)
Trial Attorney
Eduardo.palomo2@usdoj.gov

*s/Emily Czerniejewski*
EMILY CZERNIEJEWSKI (IL 6308829)
Assistant United States Attorney
Emily.Czerniejewski@usdoj.gov

*s/Tyler Aagard*
TYLER AAGARD (NC 54735)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 406-3572
Fax: (614) 469-5653
Tyler.Aagard@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2025, I filed this document electronically using the CM/ECF system and thereby caused a copy of the same to be served on all counsel of record.

*/s/ Eduardo Palomo*
Eduardo Palomo
Trial Attorney