# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | Case No: 2:25-cr-56 |
| v. | : | |
| | : | JUDGE MICHAEL H. WATSON |
| CODY L. PRATER | : | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS II, III, AND IV

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorneys and Trial Attorney, and requests that the Court deny defendant Cody L. Prater's motion to dismiss. First, the statutes charged in Counts Two, Three, and Four of the Indictment provide fair notice of what conduct they prohibit and are accordingly not unconstitutionally vague. Second, these statutes do not violate *Ashcroft v. Free Speech Coalition* because, as multiple courts of appeals have held, the statutes explicitly require proof that the material is obscene. Finally, *Stanley v. Georgia* does not extend First Amendment protection to the defendant's in-home possession of computer-generated obscene material depicting nude pubescent and prepubescent children engaging in sexually explicit conduct—in particular, the sadistic sexual abuse of toddlers and prepubescent minors displaying their genitals and engaging in bestiality and sexual acts with adults.

# I. FACTUAL BACKGROUND[1]

On July 11, 2024, law enforcement agents conducted a search of the defendant's residence pursuant to a search warrant for both the person of Cody Prater, the defendant, and his residence. Agents searched the defendant's bedroom and seized multiple digital devices belonging to the defendant. Forensic analysis of these devices revealed that the defendant received and possessed videos of real minors, primarily babies and toddlers, engaged in sexually explicit conduct. The devices also contained evidence that the defendant created, received, transported, and possessed obscene computer-generated images depicting realistic minors engaged in sexually explicit conduct, including sadistic abuse, bestiality, and sexual acts with adults. A forensic report detailing the examination of the defendant's devices will be filed under seal as an exhibit to this response.

The defendant used these devices to create hundreds of images with Stable Diffusion, an artificial intelligence (AI) text-to-image program. The images the defendant produced include, for example, photorealistic depictions of nude prepubescent children being mutilated and tortured. Metadata from those files contains prompts that the defendant entered into the Stable Diffusion model to generate the corresponding image. For example, the defendant's prompt for the file "00090-3580689886.png" stated, "Prompt: photo of a nude infant girl lying on bed, eyes closed, sleeping (pudgy:1.2), nude, nipples, small pussy, (bloody, bloody vagina, gaping vagina:1.3), pale complexion, (hands behind head:1.2), (decapitated, headless:1.4)[.]" The resulting image was a photorealistic image of an infant covered in entrails with its legs spread, with lacerations on its body, and displaying mutilated, bloody genitals. This prompt is representative of other prompts the defendant used to create approximately 100 similar photorealistic images.

---

[1] The proffered facts include evidence relevant to the defendant's motion and that the United States plans to present at trial. These facts are not intended to limit the scope of evidence the United States will introduce at trial.

The defendant's desktop computer also contained "Low-Rank Adaptation" (LoRA) files that he downloaded from the internet and entered into his Stable Diffusion prompts to create more realistic obscene images. A LoRA applies small changes to a base model file in Stable Diffusion, which allows users to fine-tune images generated by Stable Diffusion.[2] LoRAs are created by uploading training images—which may depict real individuals—to training software designed to generate LoRAs. *See generally* https://stable-diffusion-art.com/train-lora/#Step_1_Collect_training_images (last accessed September 15, 2025). Given the complexity of creating high-quality LoRAs,[3] many users prefer to download them from the internet instead. The defendant's computer contained multiple LoRAs that he used to generate obscene images of prepubescent minors engaged in sexually explicit conduct. The file names of the LoRAs on the defendant's computer were explicit and included "defecation," "baby," "Little Cocks," "tot-anatomy," "BoyModel," "RealLoli," and "pt[pre-teen]pussy." The defendant downloaded these LoRAs from the internet.

The defendant's creation and possession of obscene material of children engaging in sexually explicit conduct was deeply connected to his use of the internet. The defendant's mobile phone contained thousands of obscene computer-generated images depicting toddlers, prepubescent minors, and pubescent minors engaged in sex acts with adults, bestiality, and sadistic and masochistic abuse. The defendant used a messaging application on his phone and his computer to send and receive hundreds of obscene images and to search for child sexual abuse material. The defendant was a member of over 3,000 groups on this messaging application, including "pedofilia

---

[2] For example, a user may seek to modify a base model of a flower by using a LoRA designed to generate red roses. Where base model files tend to be large—often multiple gigabytes—LoRAs are normally less than 200 megabytes (i.e., less than a quarter of a gigabyte).

[3] *See generally* https://github.com/bmaltais/kohya_ss/wiki/LoRA-training-parameters (last accessed September 15, 2025).

toddler boys" and "kids sex." The defendant engaged in chats where he identified himself as an AI "artist" and discussed creating images with generative AI, including discussion of Stable Diffusion and LoRAs. For example, the defendant exchanged messages with another Stable Diffusion user where they discussed creating more realistic looking "boy" penises and where he received images depicting photorealistic children. The defendant exchanged other messages where he sold obscene photorealistic images of nude prepubescent children with animal-like characteristics who were engaged in sexual acts, masturbating, and engaged in the lascivious exhibition of their anus, genitals, and pubic area.

The defendant's desktop computer also contained evidence that he used DuckDNS, a free Dynamic Domain Name System (DDNS) service which offers users "a handy way for you to refer to a server/router with an easily rememberable name, where the servers ip address is likely to change[.]" *See* https://www.duckdns.org/about.jsp (last accessed Sept. 19, 2025). In essence, DDNS services allow users to host content from their home network without having to register a traditional website; any person with the name of the website "can remotely access internal network resources, such as file servers, web servers, or remote desktop services." *See* https://aws.amazon.com/what-is/dynamic-dns (last accessed September 15, 2025). The defendant used DuckDNS to download thousands of images generated with Stable Diffusion.

The defendant's criminal conduct went beyond his creation and trafficking of obscene images of children engaging in sexually explicit conduct. Forensic analysis of the defendant's other devices revealed multiple videos depicting adult males brutally raping real infants and toddlers. The defendant stored these videos on an encrypted thumb drive specifically designed to access the dark web.

The defendant is a registered sex offender who was previously convicted on August 5, 2019, for a state child pornography offense. The defendant was sentenced to four years' incarceration on that conviction.

On April 10, 2025, the Grand Jury returned an Indictment that charged the defendant with child exploitation related offenses. (Doc. #18, Indictment). Specifically, the defendant is charged in Count One with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1); in Count Two with Transportation of Obscene Matters in violation of 18 U.S.C. § 1462; in Count Three with Receipt of Obscene Visual Representation of Child Sexual Abuse, in violation of 18 U.S.C. § 1466A(a)(1) & (d)(4); in Count Four with Possession of Obscene Visual Representation of Child Sexual Abuse, in violation of 18 U.S.C. § 1466A(b)(1) & (d)(4); and in Count Five with Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2). The case was initially set for jury trial on September 29, 2025. (Doc. #26, Trial Order).

## II. THE DEFENDANT'S MOTION TO DISMISS

On September 8, 2025, the defendant filed a motion to dismiss Counts Two, Three, and Four of the Indictment, which relate to the defendant's transportation, receipt, and possession of obscene material. (Doc. #39, Motion to Dismiss). In sum, the defendant argues that obscenity law may not "be extended to depictions generated by artificial intelligence." *Id*. at 2. The defendant first argues that the obscenity statutes at issue are unconstitutionally vague as applied to AI-generated images. The defendant correctly argues that obscenity is defined "by reference to 'contemporary community standards'" but then incorrectly argues that "[n]o such consensus exists with respect to AI-generated imagery" because obscene images created by individuals using AI tools are somehow "categorically distinct from human-created pornography." *Id* at 3. The defendant did not cite any authority to support the latter two propositions.

Next, the defendant cites *Ashcroft v. Free Speech Coalition*, which involved a First Amendment challenge to a statutory definition of "child pornography"—then set forth at Title 18, United States Code, Section 2256(8)(B)—that reached material that neither showed an actual child nor was obscene. 535 U.S. 234, 240 (2002). However, the obscenity statutes charged in Counts Two, Three, and Four all require proof that the material was obscene, and *Free Speech Coalition* did not disturb the longstanding general rule that obscene speech receives no First Amendment protection. As multiple courts of appeals have held, these statutes do not violate *Free Speech Coalition*.

Finally, the defendant argues that Section 1466A(b)(1) and (d)(4) is unconstitutional under *Stanley v. Georgia*, 394 U.S. 557, 559 (1969), where the Supreme Court held that a state prosecution of an individual for possessing obscene *adult* pornography in his bedroom violated his First Amendment right to receive information in the privacy of his home. In contrast, Section 1466A(b)(1) and (d)(4) prohibits the possession of obscene visual depictions of *children* engaging in sexually explicit conduct when that possession has a necessary connection with interstate commerce. *Stanley* protects only the in-home possession of obscene material depicting adults, not the commerce-connected possession of obscene images of children engaging in sexually explicit conduct.

### III. ARGUMENT

Obscene, computer-generated photorealistic images depicting the sadistic sexual abuse of toddlers and prepubescent minors displaying their genitals, engaging in bestiality, and engaging in sexual acts with adults are categorically unprotected under the First Amendment. The statutes charged in Counts Two, Three, and Four of the Indictment provide fair notice of the conduct they prohibit and are accordingly not unconstitutionally vague. These statutes do not contravene

*Ashcroft v. Free Speech Coalition* because they require proof that the material is obscene. Moreover, *Stanley v. Georgia* does not extend First Amendment protection to the possession of realistic, computer-generated, obscene images showing children engaging in sexually explicit conduct—especially where, as here, that possession meets one of the statutorily enumerated connections with interstate commerce. The Court should accordingly deny the defendant's motion to dismiss Counts Two, Three, and Four.

A.   **Sections 1462 and 1466A Are Not Unconstitutionally Vague**

The Court should reject the defendant's argument that the *Miller* test for obscenity is unconstitutionally vague as applied to AI-generated material. In *Miller v. California*, the Supreme Court reaffirmed the principle that "obscene material is not protected by the First Amendment[.]" 413 U.S. 15, 36 (1973). The Court established a three-part test to determine whether material is obscene: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24 (citations omitted).

The Supreme Court and the Sixth Circuit have rejected vagueness challenges against the *Miller* obscenity test, finding that such challenges are "nothing less than an invitation to overturn *Miller*[.]" *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57 (1989); *Reno v. Am. Civ. Liberties Union*, 521 U.S. 844, 873 (1997) (reaffirming the *Miller* test for obscenity, and noting that the test is not vague because it "limits the uncertain sweep of the obscenity definition"); *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 436 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1178, 221 L. Ed. 2d 255 (2025).

The defendant's focus on the medium he used to create obscene material is misplaced—the method of creation is not relevant in determining whether the statutes at issue are vague. *United States v. Whorley*, 550 F.3d 326, 335 (4th Cir. 2008) (determination of obscenity has "never depended on the form or medium of expression."). The United States is unaware of any authority suggesting that the applicability of any prong of the *Miller* test is contingent upon the medium used to create obscene images. Rather, courts do not appear to consider the medium employed in the creation of obscene images to be a relevant factor. Courts around the country regularly affirm obscenity convictions for material produced using various media, including written stories, hand drawings, and computer-generated images. *See, e.g., United States v. Arthur*, 51 F.4th 560, 570 (5th Cir. 2022) ("stories and images, which graphically depict violent sexual acts and almost nothing else"); *United States v. Farrar*, 876 F.3d 702, 705 (5th Cir. 2017) ("hand-drawn images depicting the [sexual] exploitation of minor females and two hand-written books, describing sexual abuse of minors") (quotation marks omitted); *United States v. Buie*, 946 F.3d 443, 445 (8th Cir. 2019) ("detailed, full-color drawings" depicting minors engaging in sexual activity with adults).

Relatedly, the defendant argues that "[c]itizens cannot possibly predict how 'community standards' would apply to synthetic AI depictions." (Doc. #39 at 5). The defendant fails to identify any constitutionally significant reason why his use of a text-to-image generator would pull images which depict a toddler's mutilated genitals outside of the average person's ability to determine whether they violate contemporary community standards. Rather, a "juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law." *Hamling v. United States*, 418 U.S. 87, 104-105 (1974); *see also United States v. Thomas*, 74 F.3d 701, 712 (6th Cir. 1996) ("there

is no need for this court to adopt a new definition of 'community' for use in obscenity prosecutions involving electronic bulletin boards").

Just as the *Miller* test is not vague, neither are the community standards that the jury should apply in evaluating the defendant's images. Even if application of community standards presents a "close call"—which it does not—the appropriate remedy is available "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *United States v. Williams*, 553 U.S. 285, 306 (2008). A jury should therefore be permitted to determine whether the defendant's images depicting minors engaged in sexually explicit conduct were obscene. This Court should reject the defendant's argument that Sections 1462 and 1466A are unconstitutionally vague as applied to images he created with a text-to-image generator.

**B.     Sections 1462 and 1466A Do Not Violate the First Amendment Because They Require Proof of Obscenity**

Obscene speech is unprotected under the First Amendment. *Williams*, 553 U.S. at 288. As discussed above, material is obscene if it "appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value." *Free Speech Coalition*, 535 U.S. at 246 (citing *Miller*, 413 U.S. at 24). Child pornography—e.g., images of actual children engaging in sexually explicit conduct—is also categorically unprotected speech, and the First Amendment does not bar the government from criminalizing its production, distribution, or possession—even in one's own home. *Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982).

In *Free Speech Coalition*, the Supreme Court held that the definition of "child pornography" then set forth in Section 2256(8)(B)—which applied to visual depictions that are, or that appear to be, of a minor engaging in sexually explicit conduct—violated the First Amendment because (i) it did not require proof that the image showed an actual minor, and (ii) it did not require

proof that the image was obscene. *Free Speech Coalition*, 535 U.S. at 240-256. In response, Congress enacted the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the PROTECT Act), Pub. L. 108-21, 117 Stat. 650. *See United States v. Schales*, 546 F.3d 965, 970 (9th Cir. 2008). The PROTECT Act created a new statute, Title 18, United States Code, Section 1466A, which, as relevant here, makes it a crime to produce, distribute, or possess "a visual depiction of any kind … that (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene." 18 U.S.C. § 1466A(a)(1), (b)(1); *see* 18 U.S.C. § 1466A(f)(2) (defining "sexually explicit conduct" by cross-referencing Section 2256(2)(A) and (B)). Section 1466A(c) provides that "[i]t is not a required element of any offense under this section that the minor depicted actually exist." In addition, Section 1466A(a)-(b) and (d)(1)-(4) require that the substantive offense have a nexus with interstate commerce.[4]

The obscenity element incorporates the three-part obscenity test from *Miller*. *See*, *e.g.*, *United States v. Guy*, 708 F. App'x 249, 258 n. 3 (6th Cir. 2017); *Buie*, 946 F.3d at 445-446; *Whorley*, 550 F.3d at 337; *see also Smith v. United States*, 431 U.S. 291, 299 (1977). The offenses charged in Counts Two, Three, and Four expressly require proof of obscenity and they accordingly present no First Amendment problem under *Free Speech Coalition*. *United States v. Arthur*, 51 F.4th 560, 568-569 (5th Cir. 2022); *Whorley*, 550 F.3d at 335-337; *Schales*, 546 F.3d at 971-972.

Similarly, the charged obscenity offenses are not, as the defendant claims, an "end-run around" *Free Speech Coalition*. The Fifth Circuit rejected a similar argument, holding that *Free Speech Coalition* "did not, by contrast, prohibit punishment for possession of obscene images." *Farrar*, 876 F.3d at 716; *see also United States v. Peel*, 595 F.3d 763, 770 (7th Cir. 2010) (*Free*

---

[4] The only time that Section 1466A applies absent a commerce connection is if the offense was committed in the special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States. 18 U.S.C. § 1466A(d)(5). Because the defendant's challenge is an as-applied challenge, and because Section 1466A(d)(5) does not apply here, that provision is not at issue.

*Speech Coalition* held "that the production of *non-obscene* pornography in which no child was involved cannot constitutionally be prohibited, because there is no sexual abuse in such a case, and only the presence of that abuse, the Court ruled, justifies the suppression of pornography *that does not cross the line to obscenity*") (citation omitted; emphasis added).

The statutes charged in Counts Two, Three, and Four clearly reach only material that is obscene and therefore not protected by the First Amendment. The Court should accordingly reject the defendant's argument that *Free Speech Coalition* "forecloses prosecution of virtual material[.]" (Doc. #39 at 7).

**C.  Section 1466A(b)(1) and (d)(4) are Constitutional as Applied to the Defendant's In-Home Possession of Realistic, AI-Generated, Obscene Images of Minors Engaging in Sexually Explicit Conduct.**

The defendant incorrectly argues that *Stanley v. Georgia*, 394 U.S. 557 (1969), prohibits restrictions on the in-home possession of obscene material depicting minors engaged in sexually explicit conduct.

In *Stanley*, the defendant was convicted of possessing in his home obscene films of adults engaging in sexual activity, in violation of Georgia's obscenity statute. *Id*. at 558-559; *see Stanley v. State*, 224 Ga. 259 (Ga. 1968) (films showed "nude men and women engaged in acts of sexual intercourse and sodomy"). Unlike Section 1466A, the Georgia statute reached the in-home possession of materials with no demonstrated connection to interstate commerce. *See Stanley*, 394 U.S. at 558 n. 1. The Supreme Court reversed, holding generally that "obscenity is not protected by the First Amendment" but that the First Amendment does protect the "mere possession" of obscene material "in the privacy of a person's own home." *Stanley*, 394 U.S. at 560, 564-568. In so holding, *Stanley* rejected Georgia's "paternalistic" defense of the statute, which rested on the claimed need to protect the possessor from the effects of the material. *Id.* at 565-566; *Osborne*,

495 U.S. at 103. The Supreme Court later explained that *Stanley* "must be viewed in light of the weak interests asserted by the State in that case. *Stanley* itself emphasized that we did not 'mean to express any opinion on statutes making criminal possession of other types of printed, filmed, or recorded materials.... In such cases, compelling reasons may exist for overriding the right of the individual to possess those materials.'" *Osborne*, 495 U.S. at 110 (quoting *Stanley*, 394 U.S. at 568, n. 11).

The context of the Supreme Court's decision is critically important—*Stanley* should accordingly be read against the backdrop of the particular controversy that it resolved. *See Armour & Co. v. Wantock*, 323 U.S. 126, 132-133 (1944) ("our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading."); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-374 (2023) ("we emphasize[] our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." (*citing Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 399-400 (1821) (Marshall, C.J.))).

Unlike this case, *Stanley* involved a prohibition against the private, in-home possession of obscene adult pornography with no connection to interstate commerce where Georgia's stated interest was "that obscenity would poison the minds of its viewers[.]" *Osborne*, 495 U.S. at 109-11 *Id*. There are significant and meaningful differences between the material at issue in *Stanley* and the possession of obscene images of children engaging in sexually explicit conduct, where such possession presents a real and grave threat to actual children and where that possession has a necessary connection with interstate commerce. *Stanley* does not address the in-home possession of obscene depictions of children, nor does it address obscene depictions of children engaging in

"sexually explicit conduct" under 18 U.S.C. § 2256(2). This case therefore involves statutorily distinct imagery that highlights the compelling child-protection interests that are not at issue in *Stanley*.

To that end, the Supreme Court has cautioned that *Stanley* was a "narrow holding" that "should not be read too broadly," *Osborne*, 495 U.S. at 108, and that rests on an "explicitly narrow and precisely delineated privacy right[.]" *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 127 (1973). The Sixth Circuit has noted that it is "unlikely that the right to private possession of obscene material recognized in *Stanley* extends to private possession of pedophilic materials." *United States v. Mercado*, 828 F.2d 20 (6th Cir. 1987). The Seventh Circuit has similarly noted that the Supreme Court has "limited" *Stanley*'s holding "severely." *United States v. Andersson*, 803 F.2d 903, 906 (7th Cir. 1986). For example, *Stanley* has often been described as protecting only the possession of obscene material "involving adults." *See, e.g.*, *Williams*, 553 U.S. at 288-289 (*Stanley* protects "the mere possession of obscene material involving adults"); *United States v. Vincent*, 167 F.3d 428, 431 (8th Cir. 1999) ("[*Stanley*] held states cannot criminalize possession of obscenity involving adults."). Further, *Stanley* does not protect the right to import, distribute, transport, or receive obscene materials, even if those acts are done in furtherance of in-home possession. *See generally*, *e.g.*, *Smith*, 431 U.S. at 306-307.

In contrast to *Stanley*, the need to criminalize the in-home possession of images like the ones the defendant created and possessed relates directly to the "compelling" need to protect real children from real "physical and psychological" harm. *Cf. Ferber*, 458 U.S. at 756-757 (quotation marks omitted). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *id*. at 757, which distinguishes the defendant's conduct from the narrow holding in *Stanley* and places it comfortably within the line of cases

affirming the government's ability to proscribe sexually explicit imagery of children. *See Osborne*, 495 U.S. at 108 ("But assuming, for the sake of argument, that Osborne has a First Amendment interest in viewing and possessing child pornography, we nonetheless find this case distinct from *Stanley* because the interests underlying child pornography prohibitions far exceed the interests justifying the Georgia law at issue in *Stanley*.").

The government's interests in prohibiting this material are manifold and increasingly serious as AI technology improves. For example, engagement with AI-generated obscene material depicting children engaging in sexually explicit conduct poses risks to actual children by normalizing sexual activity with children and reinforcing the consumer's sexual interest in children. *Cf. United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017) ("It is undoubtedly correct that 'all child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children.'") (quoting U.S. Sentencing Comm'n, "Federal Child Pornography Offenses," at 311 (2012)). In the defendant's case, this concern is not hypothetical: he served four years in prison for prior child pornography offenses and, after his release from prison, he possessed multiple videos depicting the brutal sexual abuse of real infants and toddlers.

As AI-generated imagery becomes more indistinguishable from imagery showing actual children, it will be increasingly difficult, if not impossible, to prove whether a depicted child is real or purely AI-generated. This difficulty in distinguishing between live victims of child sexual abuse and AI-generated images will frustrate efforts to identify live victims because law enforcement will spend its limited time and resources searching for children who do not exist.

Further, applying Section 1466A(b)(1) to the defendant's conduct is critical to reduce the market for this type of material. *Cf. Osborne*, 495 U.S. at 110-111 ("Given the importance of the

State's interest in protecting the victims of child pornography, we cannot fault Ohio for attempting to stamp out this vice at all levels in the distribution chain. According to the State, since the time of our decision in *Ferber*, much of the child pornography market has been driven underground; as a result, it is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution."). The Sixth Circuit has recognized that "there is no question that Congress has a legitimate basis for attempting to regulate the interstate market in child pornography" and that child pornography statutes exist within a "larger comprehensive scheme to regulate that illicit interstate market." *United States v. Bowers*, 594 F.3d 522, 528 (6th Cir. 2010).

Here, Count Four expressly requires proof that the defendant's obscene images of minors engaged in sexually explicit conduct were connected to such an interstate market. (Doc. #18 at 3) (alleging that the defendant did "knowingly possess a visual depiction of any kind that depicts a minor engaging in sexually explicit conduct and is obscene, such visual depiction having been shipped or transported in interstate or foreign commerce"); *see also* 18 U.S.C. § 1644(A)(b)(1) and (d)(4). Indeed, the defendant's conduct is deeply connected to an interstate market of child sexual abuse material. The defendant participated in multiple groups on a messaging application dedicated to both real and AI-generated child sexual abuse material. These messages show the defendant discussing how to improve his use of AI tools to, for example, depict more realistic penises on children. This evidence was not limited to his desktop computer—his mobile phone contained evidence that he used the internet to send and receive thousands of obscene images depicting minors engaged in sexually explicit conduct. Additionally, the defendant's obscene material was not walled off from the outside world. He took his phone containing obscene material outside of his home. Also, his use of a Dynamic Domain Name System (DDNS) enabled him to remotely access obscene material anywhere. *See Thomas*, 74 F.3d at 710 (there is no "zone of

constitutionally protected privacy [that] follows [obscene] material when it is moved outside the home area.'") (quoting *United States v. Orito*, 413 U.S. 139, 141–42 (1973)).

The defendant also held himself out on a social media messaging application as an AI "artist" and frequently discussed how to use Stable Diffusion and LoRAs to create realistic obscene material depicting minors. He used this technology to generate obscene images of toddlers, prepubescent minors, and pubescent minors engaged in sex acts with adults, bestiality, and sadistic and masochistic abuse. The defendant's creation and possession of these materials depended on sophisticated tools created by like-minded individuals that he downloaded from the internet, like LoRAs for "Little Cocks" and "pt[pre-teen]pussy[.]"

Application of Section 1466A(b)(1) to the defendant's creation and possession of realistic, obscene images depicting deceased and mutilated children engaging in sexually explicit conduct is consistent with the government's compelling need to protect children, especially where—as Section 1466A(b)(1) and (d)(4) require—the defendant's possession has a nexus with interstate commerce. *Stanley*, in contrast, involved materials depicting adults; the state's principal interest involved protecting the adult possessor from the asserted harms of viewing the material, and— critically—unlike the obscenity statutes the defendant violated, the state statute at issue in *Stanley* did not require any nexus with commerce.

These differences are constitutionally decisive. *Stanley* does not apply here. Instead, the default rule—obscene material is categorically unprotected—does.

## IV. CONCLUSION

The obscene images the defendant created, transported, received, and possessed are not protected under the First Amendment. Counts Two, Three, and Four require proof that the material is obscene; these statutes are therefore not unconstitutionally vague nor do they run afoul of

*Ashcroft v. Free Speech Coalition*. Finally, *Stanley v. Georgia* does not extend First Amendment protection to the in-home possession of obscene, AI-generated material depicting minors engaged in sexually explicit conduct, especially where that possession satisfies a statutorily enumerated connection with interstate commerce. The Court should accordingly deny the defendant's motion to dismiss.

                              Respectfully submitted,

                              **DOMINICK S. GERACE II**
                              United States Attorney

By:    */s/ Eduardo Palomo*
        EDUARDO PALOMO (TX 24074847)
        Trial Attorney
        Eduardo.palomo2@usdoj.gov

        *s/Emily Czerniejewski*
        EMILY CZERNIEJEWSKI (IL 6308829)
        Assistant United States Attorney
        Emily.Czerniejewski@usdoj.gov

        *s/Tyler Aagard*
        TYLER AAGARD (NC 54735)
        Assistant United States Attorney

        303 Marconi Boulevard, Suite 200
        Columbus, Ohio 43215
        (614) 406-3572
        Fax: (614) 469-5653
        Tyler.Aagard@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically upon all counsel of record on October 3, 2025.

                                       */s/ Eduardo Palomo*
                                       EDUARDO PALOMO (TX 24074847)
                                       Trial Attorney