UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**United States of America,**

v.

Case No. 2:25-cr-56

**Cody Prater,**

Judge Michael H. Watson

**Defendant.**

## OPINION AND ORDER

Defendant moves to dismiss Counts Two and Three of the Superseding Indictment, charging him with the receipt and possession of obscene visual representations of child sexual abuse in violation of 18 U.S.C. §§ 1466A(a)(1), (b)(1), and (d)(4). Mot., ECF No. 39.[1] The Government opposes. ECF No. 53. On November 3, 2025, the parties presented oral arguments on the motion. Shortly thereafter, the Government filed supplemental briefing in opposition to the motion. ECF No. 63. For the following reasons, the Court **DENIES** the motion.

### I. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine

---

[1] Following the parties' briefing on the Defendant's motion to dismiss, ECF Nos. 39, 63, the Government filed a Superseding Indictment. ECF No. 67. Relevant here, the Government dropped the transportation of obscene material charge from the Indictment. Compare Id., with ECF No. 18. In response to the Court's December 2025 Order, the parties indicated that Defendant still moves to dismiss the receipt and possession charges of the Superseding Indictment, and that the parties will stand on their original briefing for the motion to dismiss. ECF No. 76.

without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Among the types of motions that may be filed under Rule 12 are motions objecting to "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).

A Rule 12 motion is appropriate "when it raises questions of law rather than fact." *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (citation omitted). Thus, a party may properly raise an issue under Rule 12 "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Id.* (internal quotation marks and citations omitted). "On a motion to dismiss an indictment, the court must view the indictment's factual allegations as true and must determine only whether the indictment is valid on its face." *United States v. Edwards*, 291 F. Supp. 3d 828, 831 (S.D. Ohio 2017) (cleaned up).

## II. ANALYSIS

Defendant argues that Counts Two and Three of the Superseding Indictment should be dismissed for three reasons: (1) applying obscenity law to Generative Artificial Intelligence ("generative-AI")[2] images is unconstitutional; (2) virtual depictions of child sexual abuse material ("CSAM") that do not involve real children cannot be criminalized; and (3) mere possession of obscene material

---

[2] "Generative Artificial Intelligence" refers to computer systems that can create original content—including text, images, audio, or video—based on learning from training datasets. John Villasenor, *Generative Artificial Intelligence and the Practice of Law: Impact, Opportunities, and Risks*, 25 Minn. J.L. Sci. & Tech. 25, 25 (2024) (studying the development of generative-AI in the legal profession). These systems use generative models to create new content that resembles the example data on which they were trained. *Id.*

cannot be criminalized. Mot., ECF No. 39. The Court outlines the charges against Defendant and then addresses each argument in turn.

### A. Charges Against Defendant

Count Two charges Defendant with the **receipt of obscene visual representations of sexual abuse of children** in violation of 18 U.S.C. §§ 1466A(a)(1) and (d)(4). Those sections state:

> (a) [ ] Any person who, in a circumstance described in subsection (d), knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that—(1) (A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene [. . .].

or attempts to do so, shall be subject to the penalties provided in section 2252A(b)(1), including the penalties provided for cases involving a prior conviction. . . .

> (d) [ ] The circumstance referred to in subsections (a) and (b) is that— [. . .] (4) any visual depiction involved in the offense has been mailed, or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer . . . .

In addition, Count Three charges Defendant with the **possession of obscene visual representations of sexual abuse of children** in violation of 18 U.S.C. §§ 1466A(b)(1) and (d)(4). Those provisions state:

> (b) [ ] Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that— (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene [. . .]

or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(1), including the penalties provided for cases involving a prior conviction. . . .

(d) [ ] The circumstance referred to in subsections (a) and (b) is that— [. . .] (4) any visual depiction involved in the offense has been mailed, or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer.

Importantly, then, both of the charges at issue in this motion are grounded in obscenity laws—not child pornography laws. This distinction becomes crucial to Defendant's arguments, as shown below.

## B. Application and Constitutionality of the *Miller* Test

Defendant first argues that, though the United States Supreme Court's decision in *Miller* set forth a framework to determine if material is obscene and thus unprotected speech under the First Amendment (the "*Miller* test"), the *Miller* test does not apply to generative-AI images of CSAM. Mot., ECF No. 39 at PAGEID # 150 (citing *Miller v. California*, 413 U.S. 15, 23 (1973)). Alternatively, he contends that even if the *Miller* test applies, it is unconstitutionally vague. *Id.* at PAGEID ## 151. The Court disagrees with both points.

### 1. The *Miller* test applies to generative-AI CSAM.

The First Amendment provides that "Congress shall make no law . . . abridging the Freedom of Speech." *Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012) (citing U.S. CONST. amend. I). But not all speech enjoys First Amendment

protection. *Id.* Relevant here, obscene material is not protected speech under the First Amendment. *Miller*, 413 U.S. at 23.

In *Miller*, the Supreme Court set out a framework to help resolve whether certain material is obscene or protected speech. *Id.* Under the *Miller* test, a work is obscene if: (1) "the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest," (2) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law," and (3) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *United States v. Guy*, 708 F. App'x 249, 257 (6th Cir. 2017) (citing *Miller*, 413 U.S. at 24). The *Miller* test applies the contemporary community standards that existed when the criminal charge was made. *United States v. Belfer*, No. 1:62-CR-321, 2018 WL 3374069, at *3 (N.D. Ohio July 11, 2018) (citing *Miller,* 413 U.S. at 24). "These standards are subject to shifts in social norms of decency." *Id.* (citation omitted).

In Defendant's view, this Court cannot apply the *Miller* test to the at-issue generative-AI CSAM for three reasons: (1) generative-AI did not exist at the time of the *Miller* Court's decision, (2) no contemporary community standards surrounding generative-AI CSAM exist, and (3) evolving standards of decency suggest that modern society may distinguish CSAM involving actual children from generative-AI images of CSAM. Mot., ECF No. 39 at PAGEID # 150.

The Government, however, insists that the *Miller* test applies to the generative-AI images of CSAM for several reasons. Resp., ECF No. 53. First, the Government argues that the *Miller* test can be applied here because it applies to any medium of potentially obscene material. *Id*. Second, it argues that there are contemporary community standards that can be applied to generative-AI. *Id*. Last, it argues that a jury is better equipped than the Court to resolve whether the generative-AI images of CSAM are obscene under the *Miller* test. *Id*. Upon review, the Court agrees with the Government.

The Court begins with Defendant's first argument—namely, that generative-AI did not exist at the time of the *Miller* decision. As noted above, the *Miller* test requires the trier of fact to determine the contemporary community standards based on the time when the defendant was charged, not when the *Miller* test was established, meaning the test was created precisely to evolve. *Belfer*, 2018 WL 3374069, at *3. In addition, "obscenity in any form is not protected by the First Amendment." *United States v. Whorley*, 550 F.3d 326, 337 (4th Cir. 2008) (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245–46 (2002)). The *Miller* Court did not limit the test to any specific mediums. Rather, the medium by which the obscene material is created is irrelevant; regardless of the medium, the *Miller* test determines whether the disputed material is obscene. *Whorley*, 550 F.3d at 337. In other words, the Court will apply the *Miller* test regardless of the fact that generative-AI images were not available at the time *Miller* was decided.

The Court next turns to Defendant's second argument regarding "contemporary community standards." Defendant argues that there are no contemporary community standards governing generative-AI CSAM, and non-existent standards cannot render it obscene. Mot., ECF No. 39 at PAGEID # 150. To the contrary, the *Miller* court expressly rejected the need for a criminal prosecution to rely on a specific formulation of what the "average person, applying contemporary community standards would consider certain materials to appeal to the prurient interest." *Miller*, 413 U.S. at 30. Rather, the applicable "community standard" is based on the community from which the jury is drawn. *United States v. Peraino,* 645 F.2d 548, 550 (6th Cir. 1981). Notably, "[a] juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination." *Id.* At bottom, there is no need for a formulaic standard on generative-AI because the jury is equipped to decide whether the at-issue generative-AI CSAM is obscene under contemporary community standards.

Finally, the Court considers Defendant's last argument—namely, that evolving standards of decency may distinguish the generative-AI CSAM from child pornography involving real children. Though generative-AI is new, consideration of obscene CSAM that does not involve real children is not. Because courts have upheld convictions for obscene CSAM in the form of anime, cartoons, and hand-drawings, which clearly do not involve real children, the Court finds no reason to draw the line at generative-AI. *See, e.g., United States*

*v. Seaton*, No. 24-3157, 2025 U.S. App. LEXIS 27851, at *1 (8th Cir. Oct. 24, 2025) (obscene CSAM involving three anime images); *United States v. Ostrander*, 114 F.4th 1348, 1366 (11th Cir. 2024) (obscene CSAM involving a cartoon-style drawing); *United States v. Buie*, 946 F.3d 443, 447 (8th Cir. 2019) (obscene CSAM of hand-drawings). Defendant has not established that modern society's evolving standards of decency have evolved to "accept" the sexual abuse of children simply because real children are not present in the images or videos depicting the abuse. Ultimately, as discussed above, the jury will determine whether the generative-AI images are obscene by modern standards.

### 2. The *Miller* test is not vague.

In addition, Defendant argues that even if the Court could apply the *Miller* test, its application would violate the void for vagueness doctrine. Mot., ECF No. 39 at PAGEID ## 151–52. He goes on to explain that the *Miller* test does not provide fair notice of prohibited conduct because citizens cannot predict how "community standards" would apply to generative-AI. *Id.* at PAGEID # 152. But this argument does not persuade.

The Supreme Court and Sixth Circuit have rejected vagueness challenges against the *Miller* test. *Reno v. ACLU*, 521 U.S. 844, 873 (1997) (reaffirming the Court's satisfaction with the *Miller* test for obscenity and noting that the test is not vague because it "limits the uncertain sweep of the obscenity definition"); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57–58 (1989) (rejecting the argument that *Miller*'s test for obscenity is inherently vague); *Friends of George's, Inc. v.*

*Mulroy*, 108 F.4th 431, 436 (6th Cir. 2024) (explaining that the Supreme Court has defended the *Miller* test and other adaptations of the same). Indeed, the Supreme Court has viewed such challenges as futile "invitation[s] to overturn *Miller*." *Fort Wayne Books, Inc.*, 489 U.S. at 57–58.

As the *Miller* Court further explained, the fact "[t]hat there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no[t] [a] sufficient reason to hold the language too ambiguous to define a criminal offense." *Miller*, 413 U.S. at 27 n.10 (internal quotation marks omitted). So, even though the Court can appreciate that potentially obscene generative-AI is a novel issue, Defendant had sufficient notice that his conduct—receiving and possessing obscene images of CSAM in any form—was proscribed.[3] Defendant thus fails to establish that the *Miller* test is unconstitutionally vague.

---

[3] Courts have also determined that the *Miller* test is not vague as applied to receipt and possession of obscene CSAM in violation of Section 1466A. *See, e.g., Seaton*, 2025 U.S. App. LEXIS 27851, at *1 (rejecting the defendant's vagueness argument regarding 1466A(b)(1) and upholding his conviction arising from three anime images found on his computer depicting sexually explicit acts between minor boys and an adult female); *Ostrander*, 114 F.4th at 1366 (rejecting defendant's void for vagueness and overbreadth challenges to Section 1466A(b)(1) when applied to a cartoon-style drawing of an adult male engaging in sexual conduct with a child); *Buie*, 946 F.3d at 447 (holding that Section 1466A(b)(1) is not overbroad or vague in violation of the First Amendment as applied to the defendant's hand-drawings of adults engaging in sexual conduct with children); *United States v. Handley*, 564 F. Supp. 2d 996, 1004 (S.D. Iowa July 2, 2008) (holding, in case involving cartoon depictions of child sexual abuse, that "the text of 18 U.S.C. § 1466A is not unconstitutionally vague in violation of the Due Process Clause, and the language of the statute provides adequate notice about that which it criminalizes").

### 3. The at-issue generative-AI CSAM may be found obscene under *Miller*.

Because the *Miller* test applies here and is not unconstitutionally vague, the question thus becomes whether the generative-AI CSAM in this case may be found obscene by a reasonable jury. The Court concludes that it can.

Here, the Government asserts that Defendant used Stable Diffusion, a generative-AI text-to-image program, to produce photorealistic images of child sexual abuse. Resp., ECF No. 53 at PAGEID # 321. The Government further alleges that Defendant included Low-Rank Adaptation ("LoRA") files in his Stable Diffusion prompts to create more realistic obscene images, and some LoRAs are trained on images of real individuals. *Id.* at PAGEID # 322. One of the at-issue generative-AI images in this case depicts a "photorealistic image of an infant covered in entrails with its legs spread, with lacerations on its body, and displaying mutilated, bloody genitals." *Id.* at PAGEID # 321. The Government maintains that this generative-AI image and others like it constitute obscene material under current community standards. *Id.*

The Court agrees that a jury could certainly find that the generative-AI images of infants and children being raped or mutilated appeal to (or intend to appeal to) the prurient interest, depict sexual conduct in a patently offensive way, and hold no artistic, social, political, or scientific value, even under the current community standards surrounding generative-AI. *See, e.g., United States v. Mason*, No. 3:17-cr-26, 2023 WL 6304385, at *3 (W.D. Pa. July 5, 2023) (finding

that computer-generated images of prepubescent females with semen on their faces and minors engaging in sexual acts and being raped lack serious literary, artistic, political, or scientific value). At bottom, in light of the *Miller* test, there is no basis to dismiss Counts Two and Three of the Superseding Indictment.

**C.      Generative-AI CSAM need not involve real children to be obscene.**

The Court shifts to Defendant's next position: that, in *Ashcroft v. Freedom Speech Coalition,* the Supreme Court struck down Congress' attempt to criminalize virtual child pornography, so this Court should do the same. Mot., ECF No. 39 at PAGEID # 150 (citing *Ashcroft*, 535 U.S. 234). *Ashcroft* was limited to determining whether certain material violated a *child pornography* statute; therefore, Defendant's argument was not considered by the *Ashcroft* court as it relates to charges under *obscenity statutes*.

A brief overview of the Supreme Court's cases on child pornography and obscenity is necessary to contextualize *Ashcroft*. In *Miller*, as discussed above, the Supreme Court confirmed that obscene material is not protected speech, and it went on to set out a test to determine whether material was obscene. *Miller,* 413 U.S. at 24. Next, in *Ferber*, the Supreme Court held that child pornography involving real children was not protected speech, upholding the constitutionality of a New York child pornography statute. *New York v. Ferber*, 458 U.S. 747, 761 (1982). Subsequently, the Supreme Court, in *Osborne*, rejected the argument that private citizens have a First Amendment right to possess child pornography in their home. *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). The *Osborne* Court

affirmed that there is a legitimate overwhelming State interest in protecting children from being the subject of such pornographic materials and in encouraging those possessing the same to destroy it so that child victims would not continue to be harmed by its existence. *Id.* Therefore, pre-*Ashcroft,* the Supreme Court concluded that the First Amendment protects neither child pornography nor obscene material. *See Miller,* 413 U.S. at 24; *Ferber,* 458 U.S. at 761.

Then, in *Ashcroft*, the Supreme Court struck down as overbroad and unconstitutional two provisions to the Child Pornography Prevention Act of 1996 ("CPPA"). *Ashcroft*, 535 U.S. at 245–46. The two provisions sought to expand the existing statutory definition of *child pornography* in the CPPA to include: 1) a computer-generated image that is, or appears to be, of a minor engaging in sexually explicit conduct, and 2) any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" of depicting "a minor engaging in sexually explicit conduct." *United States v. Fuller*, 77 F. App'x. 371, 379 (6th Cir. 2003) (citing *id.* and 18 U.S.C. §§ 2256(8)(B) and (D)).

The *Ashcroft* Court reasoned that, in the context of *child pornography* statutes, "the CPPA prohibits speech that records no crime and creates no victims by its production." *Id.* That is, the CPPA was at odds with *Ferber* because it had the potential to criminalize computer-generated images under *child pornography statutes*, the purpose of which was to protect real children. *Id.*

Similarly, the *Ashcroft* Court concluded that the CPPA's provisions risked criminalizing works depicting minors engaging in sexually explicit conduct that is, in addition to not being child pornography, *not obscene* under *Miller*. *Id.* at 247. Indeed, the *Ashcroft* Court found that the CPPA could prohibit works that hold artistic value and are not patently offensive by community standards, such as William Shakespeare's Romeo and Juliette, which describes teenagers engaging in sexual conduct but holds literary and artistic value. *Id.* At bottom, the *Ashcroft* Court determined that the CPPA had the potential to criminalize material that was neither involving real children, as *Ferber* addressed, nor obscene, as *Miller* addressed. *United States v. Schales*, 546 F.3d 965, 971–72 (9th Cir. 2008) (citing *Ashcroft*, 535 U.S. at 240). Thus, *Ashcroft* merely stands for the unsurprising holding that material that does not amount to child pornography (because it does not involve real children) and is not obscene cannot be criminalized because it is protected speech under the First Amendment.

*Ashcroft* thus does not help Defendant. Because Section 1466A is an obscenity statute, not a child pornography statute, the obscene material need not involve real children, so that aspect of *Ashcroft* is irrelevant to this case. *Id.* at 972; *Schales*, 546 F.3d at 972 ("The fact that this statute does not require that an actual minor exist [. . .] is immaterial because, unlike the CPPA, section 1466A(a)(1) is an obscenity statute and not a child pornography statute.").

Moreover, *Ashcroft*'s obscenity holding also does not help Defendant. The fact that *Ashcroft* concluded that a specific definition in the CPPA was so broad

that it might include protected speech does not mean that all material falling under the definition is protected speech. In other words, *Ashcroft* appeared to recognize that some materials falling under the contested definition in the CPPA would be obscene and illegal under obscenity laws. *See Ashcroft*, 535 U.S. at 247. The problem was that the definition also encompassed other material, which was not obscene and, thus, protected by the First Amendment. *Id*. Here, the material involved in Defendant's charges are not clearly within the penumbra of protected works that *Ashcroft* envisioned, so *Ashcroft's* acknowledgement that *other* material might be protected does not help Defendant. Thus, Section 1466A is not at odds with the holding in *Ashcroft*.

**D. Defendant is charged with receipt and possession of obscene CSAM that have moved in interstate commerce, not mere possession.**

Last, Defendant contends that Counts Two and Three, which charge him with receipt and possession of obscene images with a nexus to interstate commerce, must be dismissed in any event considering the Supreme Court's *Stanley* decision. Mot., ECF No. 39 at PAGEID # 153 (citing *Georgia v. Stanley*, 394 U.S. 557, 559 (1969)). But his reliance on *Stanley* is misplaced.

*Stanley* involved a Georgia statute that criminalized mere possession of obscene material—namely, adults engaged in sexually explicit conduct—in the home. *Stanley*, 394 U.S. at 559. The *Stanley* Court determined that there is a "narrow zone of constitutionally protected privacy which allows for the personal possession and perusal of obscenity in one's home." *Whorley*, 386 F. Supp. 2d

at 695 (citing *Stanley*, 394 U.S. at 565). At bottom, *Stanley* implicates the right for citizens to read or observe obscenity in the privacy of their own home. *Id.* (citing *Stanley*, 394 U.S. at 565).

Nevertheless, this zone of privacy is not unlimited, and the *Stanley* Court distinguished the Georgia statute from other obscenity criminal statutes that criminalized possession of obscene material that was distributed, sold, or advertised. *Stanley*, 394 U.S. at 547 (citations omitted). Since *Stanley,* the Supreme Court has routinely rejected giving constitutional protection to the importing, transporting, or distributing of obscene materials outside the home. *Ostrander,* 114 F.4th at 1361 (citing *United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123, 126–29 (1973)). Thus, obscene materials that have been moved in interstate commerce are not afforded constitutional protection. *Handley*, 564 F. Supp. 2d at 1001 (citing *United States v. Orito,* 413 U.S. 139, 141 (1973) (recognizing *Stanley* has firmly established the right to merely possess obscene material in the privacy of the home but it did not create a right to receive, transport, or distribute obscene materials in interstate commerce.

As noted above, Counts Two and Three allege violations of Sections 1466A(a)(1), (b)(1), and (d)(4), which, unlike the Georgia statute at issue in *Stanley*, do not criminalize mere possession of general obscene material. Rather, they require that the obscene material (1) be moved in interstate commerce, and (2) depict child sexual abuse. 18 U.S.C. §§ 1466A(a)(1), (b)(1), and (d)(4). Because the Government must prove a nexus to interstate

commerce, Section 1466A does not share the same fatal flaw as the Georgia statute in *Stanley*. Thus, receiving and possessing obscene material depicting minors engaged in sexually explicit conduct that has been moved in interstate commerce is not protected, even under *Stanley*. *See e.g. Ostrander,* 114 F.4th at 1361 (rejecting *Stanley* challenge to Section 1466A(b)(1) because it requires proof that the obscene material moved in interstate commerce); *United States v. Sluss,* No. 2:13-CR-90, 2014 U.S. Dist. LEXIS 8090, at *2 (E.D. Tenn. Jan. 15, 2014) (denying the defendant's motion to dismiss counts charging him with receipt and possession of obscene child sexual abuse under 18 U.S.C. §§ 1466A(a)(1), (b)(1)), *adopted by* 2014 U.S. Dist. LEXIS 8089 (E.D. Tenn., Jan. 23, 2014); *Buie,* 946 F.3d at 445–46 (rejecting an overbreadth challenge to 18 U.S.C. § 1466A(b)(1) for the same reason); *Handley,* 564 F. Supp. 2d at 1001 (rejecting *Stanley* challenge to Section 1466A(b)(1)); *Whorley,* 550 F.3d at 322–23 (rejecting *Stanley* challenge to Section 1466A(a)(1)). Because the federal statute at issue here differs in material respects to the state statute in *Stanley*, *Stanley* does not control here.

To Defendant's credit, he directs the Court to a case in the Western District Court of Wisconsin that determined, in the context of generative-AI images of CSAM, that Section 1466A(b)(1) was unconstitutional. Mot., ECF No. 39 at PAGEID # 153 (citing *United States v. Anderegg,* Case No. 3:24-cr-50-jdp-1 (W.D. Wis. Feb. 13, 2025), ECF No. 73). The *Anderegg* court accepted the defendant's argument that Section 1466A(b)(1) is unconstitutional because

*Stanley* bars criminalizing mere possession of obscene material. *Anderegg*, Case No. 3:24-cr-50-jdp-1, ECF No. 73. But *Anderegg's* holding is unpersuasive on that issue.[4]

The *Anderegg* court misapplied *Stanley* to Sections 1466A(b)(1) and (d)(1). There, the government argued that, unlike *Stanley,* Section 1466A(b)(1) is not a mere possession statute because of subsection (d)'s requirement for the government to prove a nexus to interstate commerce. *Id.* The government went on to explain that the defendant's possession interacted with interstate commerce because the obscene material was produced on a foreign-made laptop, which is proscribed under subsection (d)(1). *Id.*; *see also* 18 U.S.C. § 1466A(d)(1). Notwithstanding, the court rejected the government's argument. *Id.* Curiously, the court invalidated subsection (d)(1) by presuming that, because the materials used to produce the obscene material in *Stanley* (reels of eight-millimeter film) also moved in interstate commerce, the Supreme Court must

---

[4] The defendant in *Anderegg* was charged with the production, distribution, transfer, and possession of obscene material depicting a minor engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 1466A(a)(1), (b)(1), (d)(1), and 1470. *Anderegg*, Case No. 3:24-cr-50-jdp-1 (W.D. Wis. Feb. 13, 2025), ECF No. 73. The court denied the motion to dismiss the counts for production, distribution, and transfer of obscene material and granted the motion to dismiss the count for possession. *Id.* Regarding the distribution and transfer of obscene material charges, the court determined that a reasonable jury could find that the defendant's generative-AI images of realistic minor boys with erect penises could be found obscene. *Id.* As to the production charge, the court concluded that *Stanley* focused on possession, and it would not expand *Stanley's* holding to the private in-home production of obscene generative-AI images of CSAM. *Id.* The Court agrees with the *Anderegg* decision to the extent that it denied the motion to dismiss the production, distribution, and transfer of obscene generative-AI images of CSAM. The case is on appeal at the Seventh Circuit (Case No. 25-1354).

have already ruled out this basis for showing the possession of the obscene material moved in interstate commerce. *Id*. Therefore, the court misconstrued Section 1466A(b)(1) to be a mere possession statute.

But "[t]he *Stanley* Court expressly distinguished *Stanley* [from other obscenity cases] on the basis that the facts in that case did not involve interstate commerce." *United States v. Yeasley*, No. 1:23-cr-273, 2025 WL 3063712, at *3 (D. Idaho Nov. 3, 2025) (rejecting the defendant's argument that Sections 1466A(b)(1) and (d)(4) were unconstitutional in the context of obscene generative-AI images depicting minors engaged in sexually explicit conduct). The purpose of Section 1466A(b)(1) is to target individuals "who do not merely possess the covered obscenity in the privacy of their homes, but who are downloading or exchanging hundreds of such images on the internet." *Ostrander*, 114 F.4th at 1363 (citation omitted) (collecting cases). That is the case here.

According to the Government, the generative-AI images were moved in interstate commerce because Defendant used Stable Diffusion to create the obscene child and infant sexual abuse generative-AI images, and he downloaded LoRA files from the internet and uploaded them to his Stable Diffusion text-to-image prompts to perfect such images. ECF No. 53, PAGEID # 335. Notably, the LoRAs were created by other individuals who used sophisticated tools to create realistic images depicting sexual abuse of children and infants. *Id*. Put simply, even if he only viewed the generative-AI images of CSAM in his home,

Defendant's possession still affected interstate commerce because it was deeply connected to downloads from the internet. *Id.* at PAGEID ## 322, 325. In addition, the Government contends that Defendant stored the generative-AI images of CSAM on his cellphone (among other things), which device left his home. *Id.* at PAGEID # 334. Any constitutional right to possession from *Stanley* does not extend to materials moved outside of the home. *Orito*, 413 U.S. at 141–42. Thus, *Anderegg* does not save Defendant's motion.

### III. CONCLUSION

For these reasons, Defendant's motion, ECF No. 39, is **DENIED**. The Clerk **SHALL** terminate ECF No. 39 as a pending motion.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**