IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | : | |
| vs. | : | Case No. 2:25-CR-56 |
| | : | |
| CODY L. PRATER,<br>    Defendant. | : | JUDGE MICHAEL H. WATSON |
| | : | |

## DEFENSE OMNIBUS MOTIONS IN LIMINE

COMES NOW, the defendant, Cody L. Prater, by and through undersigned counsel, and respectfully requests the Court to 1) allow for cross examination of Special Agent Lavigne regarding the Court's finding that the agent's conduct violated the Fourth Amendment and 2) to exclude the audio of the government's video exhibits of child pornography finding that the audio is irrelevant and more prejudicial than probative.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

 /s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender
Soumyajit Dutta (OH 76762)
Assistant Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org
Soumyajit_Dutta@fd.org

Attorneys for Defendant
Cody L. Prater

## MEMORANDUM IN SUPPORT OF MOTION

Mr. Prater has been charged by superseding indictment with possession and receipt of child pornography and with possession and receipt of obscene visual representation of child sexual abuse. His trial is scheduled for February 2nd, 2026. A defense motion to suppress was litigated pretrial. In the subsequent order denying the motion, the Court made the finding that SA Lavigne's questioning "extended past the limits of the [search] warrants in violation of the Fourth Amendment." (Doc. 78, Pg. 22)

At the Final Pretrial Hearing on January 14, 2026, the Government requested that defense be precluded from cross examination of SA Lavigne about the Court's findings. Additionally, at this hearing, the Court inquired about whether audio from the videos of child pornography is necessary to be played in Court. This brief is filed in response to those two issues.

### LEGAL ANAYLSIS

**I.** **Cross Examination of Law Enforcement where Agent was found to have violated the defendant's constitutional rights**

In its Order denying Mr. Prater's motion to suppress, this Court made the finding that SA Lavigne's questioning "extended past the limits of the [search] warrants in violation of the Fourth Amendment" (Doc. 78, Pg. 22). Ultimately, this Court found that the evidence would nonetheless be admissible under the doctrine of inevitable discovery. *Id.* Defense counsel now seeks the opportunity to cross-examine SA Lavigne about this particular aspect of his investigation of Mr. Prater. Specifically, counsel asks that this Court allow him to broach the topic of the 4th Amendment violation found by this Court. Barring this, defense counsel at least seeks the opportunity to cross SA Lavigne about how his questioning exceeded the scope of the

warrant as determined by the Court.

Again, the defense counsel reiterates that it does not seek to broach this topic in order to re-litigate suppression or argue to the jury that evidence should be excluded. Indeed, the motion to suppress was denied, and defense counsel understands that this is the evidence that will be presented to the jury at trial.

Nevertheless, defense counsel continues to pursue and advocate for Mr. Prater's constitutional right to confront and cross-examine government witnesses – including law enforcement officers – regarding their failure to follow procedures, inconsistencies in their conduct, and the reliability of their testimony. These issues are proper subjects for cross-examination because they go directly to credibility, which is always for the jury to assess. Here, SA Lavigne's specific questioning that violated Mr. Prater's 4th Amendment rights lands squarely within the failure to follow proper procedure.

The Sixth Amendment to the Constitution guarantees the right of an accused to confront witnesses against him. *Davis v. Alaska*, 415 U.S. 308 (1974) This is more than the right to confront the witness physically. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id* at 316. "'(A) denial of cross-examination without waiver… would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Smith v. State of Illinois*, 390 U.S. 129, 131 (1968) quoting *Brookhart v. Janis*, 384 U.S. 1, 3 (1966).

This right includes "wide latitude" to cross-examine government witnesses for bias, credibility or reliability.

> "It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight

> of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony, in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial."

*Smith*, at 132. Courts have routinely held that law enforcement procedures – or lack thereof – are fair grounds for impeachment. See e.g. *United States v. Abel*, 469 U.S. 45 (1984)(bias and credibility of government witnesses always relevant); *Kyles v. Whitley*, 514 U.S. 419 (1995) (credibility and reliability of police investigations are central to the truth-finding process).

Even though the Court ruled the evidence obtained is admissible at trial, that ruling does not insulate the manner of collection from scrutiny, particularly as the Court found law enforcement did, in fact, violate the 4th Amendment in the course of gathering this portion of the evidence. As noted by this Court, "…there is space between arguing that evidence was illegally obtained and challenging the reliability of admissible evidence. So long as Defendant's cross-examination remains in that space, it is proper" (Doc. 60, Pg#3). Defense counsel avers that this Court should provide wide latitude cross-examination of this aspect of the investigation should be allowed in order to demonstrate a failure of police procedure which further reflects on both the credibility of the witness and the quality of the investigation in total, as a failure to allow this line of questioning diminishes Mr. Prater's Sixth Amendment rights.

II. **The Court should exclude the audio of the videos of child pornography as they are not relevant to the juror's inquiry and are more prejudicial than probative**

A. **Applicable Legal Standards**

Evidence is admissible only if it is relevant if (a)it has any tendency to make a fact of consequence more or less probable; and (b) the fact is of consequence to determining an action . Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed. R. Evid. 402

Even relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Unfair prejudice occurs when evidence invites the jury to decide the case on an improper basis, particularly an emotional one. While Rule 404 is most often applied to "other acts" evidence, it reflects the broader principle that evidence should not be used to provoke moral condemnation or emotional judgment unrelated to the element of charged offenses.

### 1. The Audio is Not Relevant to Any Element of the Charged Offense

To convict Mr. Prater of possession or receipt of child pornography the jury must determine whether the *visual depictions* meets the statutory definition and whether Mr. Prater knowing p "The audio of an infant crying does not advance that inquiry. It does not assist the jury in determining: whether the person depicted is a minor; whether the depiction qualifies as sexually explicit conduct under the statute; whether the defendant knowingly possessed, or received the material or whether the files traveled in interstate commerce.

The Government's burden is satisfied, if at all, by the images themselves. The presence of crying on the soundtrack does not make any fact of consequence more or less probable and is therefore irrelevant under Fed. R. of Evid 401 and 402.

### 2. Any Minimal Probative Value is Substantially Outweighed by Unfair Prejudice

Even assuming the audio has some marginal relevance, it must be excluded under Fed. R. Evid. 403. The sound of an infant crying is *inherently inflammatory*. Its predictable and intended effect is to evoke sympathy, anger and moral outrage – responses that risk overwhelming the jury's ability to evaluate the evidence dispassionately. The danger is that jurors will be influenced by emotional reaction rather than by whether the Government has proven the elements

of possession and receipt beyond a reasonable doubt.

This risk is particularly acute in child pornography prosecutions, where courts must be vigilant to ensure that convictions rest on proof of statutory elements and not on the understandably disturbing nature of the subject matter. Playing the audio adds no meaningful value but significantly increases the risk of an improper, emotionally driven verdict.

### 3. Less Prejudicial Alternatives are Readily Available

Fed. R. Evid 403 analysis properly considers whether the Government can present its case through less prejudicial means. Here, the alternative is simple and sufficient. The Government may play the video exhibits without the audio; and if necessary, any reference to the existence of audio can be handled through a neutral stipulation or testimony outside the jury's emotional earshot. Muting the audio fully preserves any legitimate probative value the visual evidence may have while eliminating the unnecessary and prejudicial emotional overlay. When an alternative has similar probative value with less unfair prejudice, courts should discount the more prejudicial version. *See Old Chief v. United States*, 519 U.S. 172 (1997).

### 4. Admission of the Audio Would Invite a Decision on an Improper Basis

Allowing the jury to hear an infant crying does not assist the jury in deciding whether the Government has met its burden on the charged counts. Instead, it invites the jury to punish Mr. Prater based on emotional reaction and moral condemnation, rather than on a careful application of the law to the evidence. That is precisely the outcome the Federal Rules of Evidence are designed to prevent.

**WHEREFORE,** for the reasons set forth above, the defense respectfully requests this Court grant these motions herein and allow the defense to cross examine SA Lavigne about the Court's finding and preclude the government from playing the audio of their trial exhibits in Court.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

 /s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender
Soumyajit Dutta (OH 76762)
Assistant Federal Public Defender
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org
Soumyajit_Dutta@fd.org

Attorneys for Defendant
Cody L. Prater

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender