UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America,

v.

Cody Prater,

Defendant.

Case No. 2:25-cr-56

Judge Michael H. Watson

## OPINION AND ORDER

In December 2025, the Court denied the motion to suppress, ECF No. 36, filed by Cody Prater ("Defendant"). O&O, ECF No. 78 (sealed). In particular, the Court found that Special Agent ("SA") Edward LaVigne's questions to Defendant about the passwords to his devices "extended past the limits of the warrant in violation of the Fourth Amendment." *Id.* at PAGEID # 633. Nevertheless, the Court concluded that suppression under the exclusionary rule as a result of the Fourth Amendment violation was not warranted because of the inevitable discovery doctrine. *Id.*

About a month later, the parties attended their final pretrial conference with the Court, during which the parties notified the Court of a dispute regarding the effect of the Court's Fourth Amendment ruling. On one hand, the Government asks the Court to (1) reconsider its determination that SA LaVigne violated the Fourth Amendment; and (2) limit or preclude Defendant's cross examination of SA LaVigne on this issue. ECF No. 91. On the other hand, Defendant insists

that (1) the Court's Fourth Amendment determination should stand (despite his disagreement with the same); and (2) he should be permitted to cross-examine SA LaVigne about "this particular aspect of his investigation." ECF Nos. 89, 92.

Upon review, the Court **DENIES** the Government's request to reconsider the Fourth Amendment determination and **GRANTS in part** and **DENIES in part** the parties' dualling requests surrounding Defendant's cross-examination of SA LaVigne.

## I. ANALYSIS

### A. Reconsideration of Fourth Amendment Determination

The Court begins with the Government's request for reconsideration.

#### 1. Standard of Review

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment[.]" *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). "The Federal Rules of Criminal Procedure do not address reconsideration motions, so courts utilize the standards applied to civil motions to alter or amend judgment when faced with those requests." *United States v. Hoepf*, No. 2:20-CR-93, 2022 WL 2669378, at *1 (S.D. Ohio June 29, 2022) (citing *United States v. Robinson*, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014)). Such motions "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

Courts have substantial discretion to grant or deny motions for reconsideration. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Such motions are "extraordinary" and "therefore receive strict scrutiny and rare approval." *Hoepf*, 2022 WL 2669378, at *1 (citation omitted). Motions for reconsideration are "not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal." *United States v. Darst*, No. 3:24-CV-616, 2025 WL 2521136, at *1 (N.D. Ohio Sept. 2, 2025) (citation omitted).

### 2. Discussion

The Government presents two arguments in support of reconsideration. *See* ECF No. 91. First, the Government contends that Defendant voluntarily consented to the search of his devices, such that there would be no Fourth Amendment violation even if SA LaVigne exceeded the scope of the warrant. *Id.* at PAGEID # 766. Second, the Government maintains that SA LaVigne's password inquiry was not a search implicating the Fourth Amendment. *Id.* at PAGEID # 767.

Neither of these arguments, though, overtly appeared in the Government's response to Defendant's motion to suppress in the context of the Fourth Amendment issue. A motion for reconsideration is not a proper means "to advance positions that could have been argued earlier but were not." *Aaron v. King*, No. 22-CV-11062, 2025 WL 1766382, at *1 (E.D. Mich. June 26, 2025); *see also, e.g., Banner v. Raisin Valley, Inc.*, 213 F.R.D. 520, 521 (N.D. Ohio 2003)

("[T]he fundamental proposition that it is not the function of a motion for reconsideration to provide an opportunity to argue something that could have been argued before is neither novel nor n[e]w."). To be sure, the Government asserted in its response to Defendant's motion to suppress that Defendant voluntarily provided his passcodes and that he was not subject to law enforcement coercion. See ECF No. 47 at PAGEID ## 197, 206–11. But the Government did not connect those assertions to a legal theory directed at the Fourth Amendment—instead, the Government disputed the exact language of the warrant and then advanced several points going to the *Fifth Amendment* self-incrimination issue. See *id.* Because the Government could have argued—but did not—that Defendant consented to the search or that SA LaVigne's actions did not amount to a search, and because the Government advances these arguments at the eleventh hour, reconsideration is not warranted.[1]

---

[1] Nor has the Government adequately shown the existence of any of the four reasons supporting reconsideration. The Government does not point to newly discovered evidence or an intervening change in controlling law. Insofar as the Government argues clear error or manifest injustice, such arguments are unavailing. Initially, though SA LaVigne's questioning of Defendant may qualify as interrogation for Fifth Amendment purposes, the questioning also implicates the Fourth Amendment because it occurred as part of SA LaVigne's execution of the warrant. *See, e.g., United States v. Hinson*, 681 F. Supp. 3d 789, 792 (N.D. Ohio 2023) (analyzing whether law enforcement, by asking for passwords in "a manner the warrant expressly 'd[id] not authorize,'" exceeded the scope of the warrant in violation of the Fourth Amendment). As to Defendant's consent, though the Government may ultimately have prevailed had it made that argument earlier, the analysis is not obvious. It is true that "exceeding the scope of a search warrant does not automatically render consent non-voluntary." *United States v. Blomquist*, 976 F.3d 755, 760 (6th Cir. 2020). Courts "must instead look at the overall circumstances to determine whether any alleged violation affected the voluntariness of consent." *Id.* The Court determined, for Fifth Amendment purposes, that law enforcement did not improperly compel Defendant to provide his passwords, *see* O&O,

### B. Scope of Cross-Examination

The Court now turns to the parties' dispute surrounding the scope of Defendant's cross-examination of SA LaVigne.

#### 1. Standard of Review

The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. "[A] primary interest secured by [the Sixth Amendment] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). Indeed, cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Attorneys conducting cross-examinations are "permitted to delve into the witness' story to test the witness' perceptions and memory" and "impeach, i.e., discredit, the witness." *Id.*; *see also Alford v. United States*, 282 U.S. 687, 692 (1931) ("It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what fact a reasonable cross-examination might develop.").

Although the Confrontation Clause "provides [a defendant] with an effective weapon, [ ] it is a weapon that cannot be used irresponsibly." *Taylor v. Illinois*,

---

ECF No. 78 at PAGEID # 619, but it is likely that Defendant would not have volunteered his passwords if SA LaVagine had complied with the warrant's terms and refrained from asking for them. Thus, any error is not clear and any injustice is not manifest. In any event, the Court previously found that the evidence from law enforcement's search is admissible under the inevitable discovery rule, so the Court is not inclined to reconsider its decision.

484 U.S. 400, 410 (1988). A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.*; *see also United States v. Peterson*, 188 F.3d 510 (table), 1999 WL 685917, at *4 (6th Cir. 1999) ("The district court may limit the cross-examination of a witness."). And "the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Smith v. State of Illinois*, 390 U.S. 129, 132 (1968); *see also, e.g.*, *Davis*, 415 U.S. at 316 (acknowledging that cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant[.]").

### 2.   Discussion

Defendant asks for the opportunity to cross-examine SA LaVigne about "the topic of the 4th Amendment violation found by this Court" and about how SA LaVigne's questioning "exceeded the scope of the warrant as determined by the Court." ECF No. 89 at PAGEID ## 752–53. According to Defendant, the violative nature of SA LaVigne's questioning "lands squarely within the failure to follow proper procedure," which "further reflects on both the credibility of [SA LaVigne] and the quality of the investigation in total," such that the Court "should

provide wide latitude [for] cross-examination of this aspect of the investigation." *Id.* at PAGEID ## 753–54.

The Government, in tandem, requests the opposite—namely, that the Court "limit or preclude cross examination of [SA] LaVigne on questions related to the finding of a Fourth Amendment violation." ECF No. 91 at PAGEID # 768. The Government complains that such cross-examination "would confuse the issues and cause the jurors to unfairly question what the Court has ruled is admissible evidence." *Id.* (citing Fed. R. Evid. 403). Specifically, the Government reasons that compliance with the search warrant and suppression of any resulting evidence are issues of law for the Court, not issues of fact for the jury, and the Government seeks to avoid "a mini-trial within the trial about whether or not [SA] LaVigne did or did not comply with a search warrant." *Id.* at PAGEID ## 769–70.

Upon review, the Court will permit Defendant to cross-examine SA LaVigne on *factual matters* concerning SA LaVigne's collection of evidence during the investigation of Defendant. But the Court will not allow Defendant to question SA LaVigne about *matters of law* surrounding the scope of the warrant or the Fourth Amendment violation. The Court explains this distinction and its practical application below.

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Here, how

SA LaVigne collected evidence is relevant in that it pertains to whether that evidence against Defendant, though admissible, is sufficiently reliable to prove a fact beyond a reasonable doubt. *Cf., e.g., United States v. Bell*, No. CR 17-20183, 2022 WL 1214157, at *2 (E.D. Mich. Apr. 25, 2022) ("Admittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant." (citation omitted)); *United States v. Poulsen*, 543 F. Supp. 2d 809, 811 (S.D. Ohio 2008) (observing in the context of expert testimony that "evidence tending to show that the Government failed to follow up on fruitful leads, misinterpreted information in a material way, or employed faulty investigative techniques[ ] could be probative of whether the Government has made its case against Defendants"); *see also Kyles v. Whitley*, 514 U.S. 419, 446 n.15 (1995) (recognizing that when "the probative force of evidence depends on the circumstances in which it was obtained" and those circumstances raise a possibility of fraud, "indications of conscientious police work will enhance probative force and slovenly work will diminish it"). The Court previously observed that "there is space between arguing that evidence was illegally obtained and challenging the reliability of admissible evidence." ECF No. 60 at PAGEID # 392. Defendant's cross-examination of SA LaVigne within that space—i.e., questions about the *facts* underlying SA LaVigne's collection of evidence—is permissible.

Notwithstanding the above, the ultimate legal conclusions that SA LaVigne's conduct exceeded the scope of the warrant and amounted to a Fourth Amendment violation, as affirmatively determined by the Court, are only marginally (if at all) relevant. *See Van Arsdall,* 475 U.S. at 679 (permitting cross-examination to be "reasonably limited if, for instance, the proposed evidence is only marginally relevant"). The presence of a constitutional violation primarily relates to the propriety of applying the exclusionary rule. But it is within the Court's domain to "decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104; *see also, e.g., United States v. Stuart,* 507 F.3d 391, 395 (6th Cir. 2007) ("[C]ourts rather than juries must ultimately decide whether a Fourth Amendment claim requires the suppression of evidence."). In other words, whether SA LaVigne violated the Fourth Amendment, or even whether his questioning beyond the four corners of the warrant amounted to a legal violation of the warrant, is not for the jury to decide. Allowing Defendant to cross-examine SA LaVigne about matters of *law* that the Court has *already* decided and that are not in the province of the jury has low (or negligible) probative value, and any such probative value is considerably outweighed by the likelihood that the jury will be confused or misled as to the issues properly for their consideration in this case. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . confusing the issues, misleading the jury[.]").

Moreover, "[l]imitations on specific inquiries by the defense are permissible so long as the jury has sufficient other information upon which it may make a discriminating appraisal of the witness's motives and bias." *United States v. Peterson*, 1999 WL 685917, at *4 (citation omitted); *see also, e.g., United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009) (noting that the key inquiry "is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination"). Nothing suggests that the jury will lack enough information to appraise SA LaVigne as a witness or follow Defendant's theory of the case as to his conduct in the investigation if the Court prevents Defendant's cross-examination from broaching matters of law, especially considering that the Court is permitting Defendant to ask SA LaVigne factual questions about his collection of evidence.

In sum, the Court will allow Defendant to cross-examine SA LaVigne on *factual matters* concerning SA LaVigne's collection of evidence during the investigation of Defendant. Specifically, Defendant may ask SA LaVigne about the language in the warrant and whether (as a *matter of fact*) that language expressly prohibited SA LaVigne from asking Defendant for passwords. Defendant may further ask SA LaVigne whether he, nonetheless, asked Defendant for his passwords. But the Court will not allow Defendant to question SA LaVigne about whether (as a *matter of law*) he "exceeded the scope of the warrant," whether (as a *matter of law*) his conduct constituted a violation of

Defendant's Fourth Amendment rights, or whether (as a *matter of law*) the Court concluded the same.[2]

## II. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Government's request to reconsider the Fourth Amendment determination. The Court **GRANTS in part** and **DENIES in part** the parties' opposing requests surrounding Defendant's cross-examination of SA LaVigne consistent with this Opinion and Order.

Should the Government believe, during the course of trial, that Defendant's cross-examination of SA LaVigne violates the spirit of this Opinion and Order (which the Court has no reason to think will occur), the Court expects the Government to lodge a contemporaneous objection.

**IT IS SO ORDERED.**

*[signature]*

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**

---

[2] In practice, Defendant may show SA LaVigne the warrant and ask SA LaVigne the questions: "Didn't the language in the warrant prohibit you from asking Defendant for his passwords?" and "Didn't you ask him anyway?" But Defendant may *not* ask questions like, "Didn't you exceed the scope of the warrant?" or "Didn't the Court find that you exceeded the scope of the warrant?" or "Didn't the Court find that you violated Defendant's Fourth Amendment rights?"