**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | : | |
| vs. | : | Case No. 2:25-CR-56 |
| | : | |
| CODY L. PRATER,<br>Defendant. | : | JUDGE MICHAEL H. WATSON |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING THE MOTION TO DISMISS COUNTS III & IV OF THE INDICTMENT AND RENEWED MOTION TO DISMISS**

COMES NOW, the defendant, Cody L. Prater, by and through undersigned counsel and respectfully moves this Court to reconsider its prior order denying his motion to dismiss Counts III and IV of the indictment, which charged him with the receipt and possession of obscene virtual depictions of CSAM generated through artificial intelligence, in violation of 18 U.S.C. §1466A under Fed. R. Crim. P 12(c)(3). In support of this motion, Mr. Prater relies on the intervening appellate authority directly addressing the constitutional questions previously presented to this Court. Specifically, in *United States v. Anderegg,* No. 25-1354 (7th Cir. Aug. 25, 2026), the Seventh Circuit Court of Appeals held that §1466A(b)(1) was unconstitutional as applied to a defendant's possession, within the privacy of his home, of obscene, artificially generated visual depictions that did not involve actual children.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

/s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Soumyajit Dutta (OH 76762)

Assistant Federal Public Defenders
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org
Soumyajit_Dutta@fd.org

Attorneys for Defendant
Cody L. Prater

## MEMORANDUM IN SUPPORT OF MOTION

### I. Procedural Background

Prior to trial, Mr. Prater moved to dismiss Counts III and IV of the indictment, arguing that the application of §1466A to his receipt and possession of artificially generated images violated the First Amendment. Central to Mr. Prater's challenge was the distinction between obscene materials depicting actual children and obscene materials generated through artificial intelligence that neither depict nor involve actual children.

This Court denied the defense motion, and the matter proceeded to trial. Mr. Prater was subsequently convicted of these counts. Significantly, the evidence presented at trial established that the images underlying these counts were artificially generated and that no actual child was used in their creation.

Subsequent to this Court's ruling, the Seventh Circuit decided *Anderegg*, addressing the constitutionality of §1466(b)(1) under materially analogous circumstances. The Seventh Circuit affirmed the district court's dismissal of the possession count, concluding that the prosecution could not be reconciled with the constitutional protections articulated in *Stanley* and *Free Speech Coalition.* Although *Anderegg* is not binding authority in this Circuit, its persuasive force derives from its careful application of controlling Supreme Court precedent, including *Stanley v.*

*Georgia,* 394 U.S. 557, (1969); *New York v. Ferber*, 458 U.S. 747 (1982); *Osborn v. Ohio*, 495 U.S. 103 (1990); and *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). The intervening decision in *Anderegg*, coupled with the factual record developed at trial that the AI images did not utilize real children, warrants reconsideration of this Court's prior ruling.

The Court may allow for a renewed motion under Fed. R. Crim. P 12(C)(3) where there is good cause shown. Here, defense asserts that the recent intervening ruling in *Anderegg* is good cause.

## II. Government Supreme Court Precedent Protects the Private Possession of Obscenity Where No Actual Child is Involved

### A. The government's authority to regulate obscenity does not extend to its mere possession within the privacy of the home.

The Supreme Court has long recognized that obscenity falls outside the general protections afforded to speech under the First Amendment. *Roth v. United States*, 354 U.S. 476, 485 (1957). In *Miller v. California,* 413 U.S. 15, 24, (1973), the Court articulated the familiar three-part standard for determining whether material constitutes legally proscribable obscenity: whether the material, considered as a whole and evaluated under contemporary community standards appeals to a prurient interest; whether it portrays specifically defined sexual conduct in a patently offensive manner; and whether, considered in its entirety, it lacks serious literary, artistic, political or scientific value.

The determination that material is obscene, however, does not end the constitutional inquiry. The Supreme Court has recognized that the Constitution affords heightened protection to the privacy of the home. *United States v. Orito*, 413 U.S. 139, 142 (1973). In *Stanley*, the Supreme Court reconciled these principles, holding that although the government possesses

broad authority to regulate obscenity, that authority does not extend to an individual's mere possession of obscene materials within the privacy of his own home. 394 U.S. at 568.

The constitutional protection recognized in *Stanley* does not depend upon the expressive value of the material possessed. Rather, it derives from the individual's constitutionally protected interest in receiving information and ideas and maintaining the privacy of his home. *See United States v. Reidel*, 402 U.S. 351, 354-56 (1971). The fact that the images underlying Mr. Prater's convictions satisfy the legal definition of obscenity does not, standing alone, establish that their private possession may constitutionally be criminalized. Indeed, *Stanley* necessarily presupposes that the materials at issue are obscene. Were a finding of obscenity sufficient to overcome the constitutional protection afforded to private possession, *Stanley* would have no practical effect.

**B. The exception permitting criminalizing of the private possession of child pornography rests upon the exploitation of actual children.**

The Supreme Court subsequently recognized a distinct basis upon which the government may regulate sexually explicit materials involving actual children. In *Ferber,* the Court held that sexually explicit depictions involving actual children constitute a separate category of unprotected expression, irrespective of whether the materials satisfy the definition of obscenity articulated in *Miller*. 458 U.S. at 756-64.

The *Ferber* Court's reasoning rested principally upon the government's compelling interest in protecting children from sexual exploitation and abuse. The production of such materials harms the children used in their creation, their continued circulation perpetuates that harm, and the existence of a commercial market provides an economic incentive for further exploitation. Thus, the constitutional justification for the categorical prohibition recognized in

*Ferber* was not simply the sexual content of the images. Rather, it was the relationship between the images and the exploitation of the actual children involved in their production.

The Supreme Court extended that reasoning in *Osborne*, holding that the government could constitutionally prohibit the possession of child pornography, even within the privacy of the home. 495 U.S. at 109-11. In distinguishing *Stanley,* the Court emphasized the government's compelling interest in eliminating the market for materials produced through the sexual exploitation of children and preventing the constitutional harm inflicted upon those children through the retention and circulation of their images.

Accordingly, *Osborne*, did not overrule *Stanley* or establish a categorical exception to its protections based solely upon the subject matter of an obscene image. Instead, it recognized that the government's interest in preventing the exploitation of *actual* children justified an exception to the constitutional protection otherwise afforded to private possession. That justification is absent here.

### C. ***Free Speech Coalition*** **Confirms the Constitutional Distinction Between Actual and Virtual Depictions**

In *Free Speech Coalition*, the Supreme Court addressed congressional efforts to extend the prohibition against child pornography to visual depictions that appeared to portray minors but were produced without the involvement of actual children. 535 U.S. at 239-41. The Court rejected the government's contention that such materials could be treated as constitutionally equivalent to the materials at issue in *Ferber*. Unlike images produced through the exploitation of actual children, virtual depictions do not necessarily constitute a record of abuse, perpetuate harm to an identifiable child, or create a market dependent upon the exploitation of children. *Id.* at 249-51

The government nevertheless advanced several alternative justifications for criminalizing virtual depictions, including that such materials could facilitate grooming of children, encourage future criminal conduct, and impede the prosecution of offenses involving actual children by making it more difficult to distinguish authentic images from artificially created ones. The Supreme Court rejected those justifications as sufficient grounds for categorically prohibiting otherwise protected virtual depictions. *Id.* at 251-56. Defense does not contend that *Free Speech Coalition*, standing alone, establishes a constitutional right to possess all forms of virtual depictions. Rather, its significance here is that it identifies why materials generated without the involvement of actual children are constitutionally distinguishable from the materials addressed in *Ferber* and *Osborne*.

Read together, *Stanley* and *Free Speech Coalition* establish the constitutional framework applicable to Mr. Prater's possession offense. Under *Stanley*, the obscenity of the materials does not eliminate the constitutional protections afforded to its possession within the home. Under *Free Speech Coalition*, the government's asserted interest in protecting actual children does not automatically justify treating entirely virtual depictions as equivalent to materials produced through actual child exploitation. It is precisely this intersection of Supreme Court precedent that the Seventh Circuit addressed in *Anderegg*.

## III. The Seventh Circuit's Intervening Decision in *United States v. Anderegg* Directly Supports Mr. Prater's As-Applied Constitutional Challenge

In *Anderegg*, the defendant was charged, among other offenses, with knowingly possessing obscene visual depictions of minors in violation of 18 U.S.C. §1466A(b)(1). The government alleged that the defendant had used generative artificial intelligence software to create highly realistic sexually explicit images depicting children. The government conceded, however, that the images did not depict, and could not be linked to actual children. Prior to

trial, Anderegg moved to dismiss the possession count, arguing that the statute, although capable of constitutional application in other circumstances, violated his First Amendment rights as applied to his possession of the images within his home. The district court agreed and dismissed the possession count. The government filed an interlocutory appeal. On August 25, 2026, the Seventh Circuit affirmed.

In resolving Anderegg's constitutional challenge, the Seventh Circuit considered three interrelated questions: whether his possession fell within the constitutional protections recognized in *Stanley*; whether obscene virtual depictions should nevertheless be excluded from those protections under the rationales articulated in *Ferber* and *Osborne*; and whether the government's proposed justifications for excluding such materials could be reconciled with *Free Speech Coalition*.

### A. Neither an Interstate Commerce Nexus nor the Subject Matter of the Images Removes Private Possession from *Stanley's* protection.

The government first sought to distinguish *Stanley* on the basis that Anderegg's possession involved an interstate commerce nexus. According to the government, the jurisdictional requirement contained in §1466A(d)(4) meant that the statute criminalized something more than mere possession within the privacy of the home. The court distinguished Congress's authority to regulate interstate commerce from the separate constitutional limitations imposed upon the exercise of that authority by the First Amendment. *Anderegg*, slip op. at 14-18. The government also argued that *Stanley* should be understood as protecting only the possession of obscene materials depicting adults. The Seventh Circuit rejected that proposed limitation as inconsistent with the reasoning underlying *Stanley*. The protection recognized in *Stanley* was grounded in the privacy of the home, not in a distinction based upon the content or subject matter of the obscene material possessed.

The Seventh Circuit therefore concluded that Anderegg's conduct came within the constitutional protections recognized in *Stanley*, unless an independently sufficient justification existed for treating obscene virtual depictions differently from other forms of obscenity.

### B. ***Ferber*** **and** ***Osborn*** **Do Not Supply a Constitutional Basis for Prohibiting the Private Possession of Entirely Virtual Depictions**

The Seventh Circuit next considered whether the rationale underlying *Ferber* and *Osborne* permitted the government to prohibit Anderegg's possession notwithstanding *Stanley*. This dispositive factual distinction was the absence of an actual child involved in the production of the image. Because the depictions underlying Anderegg's possession charge did not involve real children, the Supreme Court's decisions permitting the categorical prohibition of materials produced through actual child exploitation did not directly govern his conduct. *Anderegg*, slip op. at 19-20. The Seventh Circuit accordingly considered whether the government's alternative justifications for criminalizing the possession of virtual depictions were sufficient to overcome the constitutional protections recognized in *Stanley*.

### C. **The Government's Alternative Justifications Had Already Been Rejected by the Supreme Court in Free Speech Coalition**

In attempting to justify the prohibition, the government relied upon several concerns relating to the potential misuse of virtual depictions and the difficulties increasingly realistic imagery presents to law enforcement. The Seventh Circuit recognized the seriousness of those concerns, particularly in light of substantial technological developments since the Supreme Court decided *Free Speech Coalition*. Nevertheless, the government's arguments substantially replicated those previously considered and rejected by the Supreme Court. The Seventh Circuit acknowledged that advances in artificial intelligence might warrant renewed examination of the constitutional boundaries established by the Supreme Court. But whether those developments justify

modifying existing constitutional doctrine is ultimately a question for the Supreme Court, not the lower federal courts. Applying the constitutional principles articulated in *Stanley* and *Free Speech Coalition*, the Seventh Circuit concluded that § 1466A(b)(1) was unconstitutional as applied to Anderegg's possession of obscene, artificially generated images within his home. *Anderegg*, slip op. at 23-24.

### IV. The Reasoning of *Anderegg* Applies With Equal Force to Mr. Prater's Possession Conviction.

The constitutionally significant circumstances identified in *Anderegg* are present here. Like Anderegg, Mr. Prater was prosecuted under §1466A for possessing obscene visual depictions generated through artificial intelligence. Like the images at issue in *Anderegg*, the images underlying Mr. Prater's conviction did not involve actual children. And, as in *Anderegg*, Mr. Prater challenges the possession of those materials within the privacy of the home.

Indeed, the factual basis for Mr. Prater's as-applied challenge is now established by the evidentiary record developed at the trial. The Court need not speculate as to whether the images involved actual children, nor must it resolve a factual dispute concerning their origin. The testimony established that the images were artificially generated and that no actual child was used in their creation.

Consequently, the government cannot justify Mr. Prater's possession conviction by invoking the particular harms that supported the Supreme Court's decision in *Ferber* and *Osborn.* There was no actual child exploited in the creation of the images, no underlying act of abuse recorded in those images, and no child subjected to continuing victimization through the retention. Nor does the realistic nature of the depictions provide a constitutionally sufficient basis for distinguishing Mr. Prater's conduct from that protected under *Stanley*. As *Anderegg* recognizes, the technological advancements that permit artificially generated images to resemble authentic

photographs do not, without further direction from the Supreme Court, eliminate the constitutional distinction between actual and virtual depictions.

Mr. Prater recognizes that *Anderegg* is persuasive rather than binding authority. Nevertheless, the Supreme Court precedent upon which its holding rests is binding upon this Court. The Seventh Circuit did not announce a new constitutional right or expand *Stanley* beyond the principles established by the Supreme Court. Rather, it applied existing constitutional doctrine to a technological development that did not exist when those protections were first articulated.

The intervening decision in *Anderegg* therefore provides substantial grounds for reconsidering this Court's prior ruling and concluding that §1466A(b)(1) is unconstitutional as applied to Mr. Prater's possession of entirely virtual obscene materials within his home.

## V. Mr. Prater Further Requests Reconsideration of the Constitutionality of the Receipt Count

Mr. Prater also respectfully requests that the Court reconsider its ruling with respect to Count III charging receipt of the artificially generated materials. Mr. Prater acknowledges that the precise holding in *Anderegg* was limited to possession under § 1466A(b)(1), and that the Supreme Court has distinguished the constitutional protection afforded to private possession from the government's authority to regulate the distribution, transportation, and importation of obscenity. *See Reidel*, 402 U.S. at 354-56; *Orito*, 413 U.S. at 141-43.

To the extent Mr. Prater's receipt consisted of the private acquisition of entirely virtual materials for personal possession and viewing within his home, rather than their commercial distribution or dissemination to others, Mr. Prater submits that the prosecution implicates the same constitutional interests underlying *Stanley.* The constitutional protection afforded to private possession would be substantially diminished if the government could, in every instance,

criminalize the private acquisition necessarily preceding that possession, without regard to the manner in which the materials were acquired or the circumstances surrounding their receipt.

Mr. Prater does not assert an unrestricted constitutional right to engage in interstate commerce involving obscene materials. Rather, Mr. Prater requests that this Court examine the particular conduct supporting the receipt conviction and determine whether, under the circumstances of this case, the receipt offense represents a constitutionally permissible regulation of conduct distinct from private possession or instead impermissibly criminalizes the exercise of the privacy interest recognized in *Stanley*.

Mr. Prater further submits that, even if the Court concludes that existing Supreme Court precedent forecloses relief as to the receipt count, that determination does not resolve the constitutionally of the separate possession count. The distinction between receipt and possession must operate in both directions. The government's authority to regulate means by which obscene materials are acquired does not necessarily establish its authority to punish their subsequent private possession.

Accordingly, Mr. Prater requests dismissal of both counts or, alternatively, dismissal of the possession count, and expressly preserves his constitutional challenge to the receipt count for appellate review.

## CONCLUSION

This case does not require the Court to determine whether the materials underlying Mr. Prater's convictions are socially acceptable, morally objectionable or deserving of affirmative constitutional protections in the public sphere. Nor does it call into question the government's compelling interest in preventing the sexual exploitation of children.

The question is considerably narrower: whether the government may criminalize an

individual's private possession of obscene visual depictions generated entirely through artificial intelligence when no actual child was involved in their creation. The Seventh Circuit has addressed that precise question and concluded that controlling Supreme Court precedent prohibits such an application of §1466A(b)(1).

**WHEREFORE,** defense would request this Court reconsider its prior order denying Defendant's motions to dismiss counts III and IV. ECF No. 39 and find §1466A(b)(1) unconstitutional as applied. Vacate and dismiss counts III and IV of the superseding indictment. Alternatively, vacate the conviction and dismiss count IV charging possession under §1466A(b)(1) and grant such further relief as this Court deems just and appropriate.

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

/s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Soumyajit Dutta (OH 76762)
Assistant Federal Public Defenders
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Stacey_MacDonald@fd.org
Soumyajit_Dutta@fd.org

Attorneys for Defendant
Cody L. Prater

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Stacey MacDonald
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender